1  Anthony T. King (#027459)
2  Megan Carrasco (#037109)
   SNELL & WILMER L.L.P.
3  One East Washington Street
   Suite 2700
4  Phoenix, Arizona 85004-2556
   Telephone:  602.382.6000
   Facsimile:  602.382.6070
5
6  E-Mail: aking@swlaw.com

7  *Attorneys for Defendants Gabor Smatko, Monica*
   *Smatko, Mobilityless, LLC, Epizontech, LLC,*
   *Fountainmoons, LLC, Hillsunion, LLC,*
8  *Mobilitytrend, LLC, & Mogavike2020, LLC*

9
              IN THE UNITED STATES DISTRICT COURT
10
              FOR THE DISTRICT OF ARIZONA
11

12
   Mary Makuc, and all similarly situated        No. 2:24-cv-00633-ROS
13 persons,
                                                  **Motion to Compel Arbitration and to**
14              Plaintiff,                         **Stay This Action Pending Arbitration**

15       v.                                       **(Oral Argument Requested)**

16 Gabor Smatko, Monica Smatko,
   Mobilityless, LLC, Epizontech, LLC,
17 Fountainmoons, LLC, Hillsunion, LLC,
   Mobilitytrend, LLC, Mogavike2020, LLC,
18 and John Does I-X,

19              Defendants.

20

21       Pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), and Plaintiff

22 Mary Makuc's ("Plaintiff" or "Ms. Makuc") agreement to arbitrate her individual claims,

23 Defendants Gabor Smatko, Monica Smatko, Mobilityless, LLC, Epizontech, LLC,

24 Fountainmoons, LLC, Hillsunion, LLC, Mobilitytrend, LLC, and Mogavike2020, LLC

25 (collectively, "Defendants") respectfully move this Court to enter an order (1) compelling

26 arbitration of all of Plaintiff's individual claims asserted in the Class Action Complaint and

27 Jury Demand (the "Complaint") against Defendants and (2) staying this action until

28 arbitration is complete.

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

In April 2021, Ms. Makuc purchased an electric tricycle from Mobilityless, LLC's website www.mobility4less.com. To make her purchase, Ms. Makuc had to affirmatively check a box confirming "I have read and agree to the website **terms and conditions***". This line and check box were both located directly above the "Place Order" button to finalize her purchase and order the electric tricycle. The bolded "terms and conditions" phrase was a hyperlink that, when clicked on, immediately pulled up each of the agreed upon policies and agreements into a window directly above such line. The terms and conditions included the company's return policy, shipping delivery policy, privacy policy, and most relevant here: the "Waiver" policy entitled "Dispute Resolution Agreement & Class Action Waiver" (the "Arbitration Agreement").

The Arbitration Agreement "is governed by the [FAA], 9 U.S.C. § 1 et seq.", "evidences a transaction involving commerce", and "applies to any legal dispute, past, present or future, arising out of or related to Customer … purchasing any of our products from us ("Company") or relationship with any of its agents, employees, affiliates, successors, assigns, subsidiaries or parent companies (each of which are third party beneficiaries of this Agreement")." In addition, the Arbitration Agreement "is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law, and therefore this Agreement requires that all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial." Pursuant to the Arbitration Agreement, Ms. Makuc also waived and "g[a]ve up [her] legal right to participate as a class representative or class member of any class claim … including any right to class arbitration or any consolidation of individual arbitrations."

Ms. Makuc could not have placed her order and purchased the electric tricycle without affirmatively checking the box and agreeing to the website's terms and conditions, including the Arbitration Agreement. By affirmatively checking the box agreeing to the website's terms and conditions and purchasing the electric tricycle, Ms. Makuc agreed to arbitrate "any legal dispute … arising out of or related to [her] … purchasing any of our products … or relationship with any of [Mobilityless, LLC's] agents, affiliates, successors,

assigns, subsidiaries or parent companies ….” Because Ms. Makuc agreed to arbitrate her claims and waived any right to participate as a class representative or class member, the Court should compel arbitration of Ms. Makuc's individual claims and bar Ms. Makuc from asserting any of her claims on behalf of a purported class.

Furthermore, Ms. Makuc can be compelled to arbitrate her claims with the other non-signatory Defendants. *See Sun Valley Ranch 308 Ltd. P'Ship v. Robson*, 294 P.3d 125 (Ariz. Ct. App. 2012) (vacating superior court order denying motion to compel arbitration because non-signatory defendants may compel arbitration against signatory under alternative estoppel theory). Thus, Defendants request that the Court compel arbitration of each of Plaintiff's individual claims against Defendants and stay this action pending arbitration of Ms. Makuc's individual claims.

This Motion is supported by the following memorandum of points and authorities, the exhibits attached hereto, and the Court's record.

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

**I.    RELEVANT BACKGROUND**

    **A.    <u>Defendant Mobilityless, LLC Sold Personal Electric Vehicles Through Its Website www.mobility4less.com and Required Each Customer to Agree to the Terms and Conditions Before Purchasing a Product.</u>**

Through the website www.mobility4less.com (the "<u>Website</u>"), Defendant Mobilityless, LLC sold affordable electric vehicles, including electric bicycles, tricycles, and wheelchairs. Declaration of Gabor Smatko ¶ 4, attached as Ex. A. Mobilityless, LLC was "committed to making mobility safer, smarter, and more enjoyable for everyone." *Id.* ¶ 3. Mobilityless, LLC was solely owned and operated by Gabor Smatko. *Id.* ¶ 2.

Since its launch in 2018, the Website has had each of the following policies and agreements posted on the website: (1) "Our Policy" (which outlines, among other things, the company's return policy, warranty policy, electronic check processing, etc.); (2) Shipping Delivery Policy; and (3) a "Privacy Policy". Ex. A (Smatko Dec) ¶ 6; Exs. 1-3 to Ex. A. In June 2020, Mobilityless, LLC added to the Website a "Waiver" policy,

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

specifically entitled "Dispute Resolution Agreement & Class Action Waiver" (the "Arbitration Agreement"). *Id.* ¶ 10; Ex. 4 to Ex. A.

The Arbitration Agreement "is governed by the [FAA], 9 U.S.C. § 1 et seq.", "evidences a transaction involving commerce", and "applies to any legal dispute, past, present or future, arising out of or related to Customer … purchasing any of our products from us ("Company") or relationship with any of its agents, employees, affiliates, successors, assigns, subsidiaries or parent companies (each of which are third party beneficiaries of this Agreement")." Ex. A (Smatko Dec) ¶ 13; Ex. 4 to Ex. A. In addition, the Arbitration Agreement "is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law, and therefore this Agreement requires that all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial." Ex. A (Smatko Dec) ¶ 14; Ex. 4 to Ex. A. Such disputes expressly included, but were not limited to, "disputes arising out of or relating to interpretation or application of this Agreement, including the scope, formation, enforceability, revocability or validity of the Agreement or any portion of the Agreement." Ex. A (Smatko Dec) ¶ 15; Ex. 4 to Ex. A.

Pursuant to the Arbitration Agreement, customers purchasing products via the Website, including Ms. Makuc, also waived and "give up [her] legal right to participate as a class representative or class member of any class claim … including any right to class arbitration or any consolidation of individual arbitrations." Ex. A (Smatko Dec) ¶ 16; Ex. 4 to Ex. A.

Each customer who places an order for a product through the Website must enter their name, address, and other information. Ex. A (Smatko Dec) ¶ 18. Before being able to place the order, the customer must click a box confirming that "I have read and agree to the website **terms and conditions***". (bold emphasis in original). Ex. A (Smatko Dec) ¶ 19; Ex. 5 to Ex. A. The box is not automatically checked, and each customer must affirmatively click it to place an order through the Website. *Id.* ¶ 21; Ex. 5 to Ex. A. The phrase "term and conditions" is bolded and hyperlinks to the Website's various policies. *Id.* ¶ 22. When

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

the customer clicks on "terms and conditions", each of the Website's various terms and conditions pop up in a window just above the check box so that the customer can scroll through and read each individual policy. *Id.* ¶ 23. Each of the terms of conditions, including the "Waiver" policy (specifically entitled "Dispute Resolution Agreement & Class Action Waiver" (*i.e.*, the Arbitration Agreement)), can be accessed and read in this manner. Ex. A (Smatko Dec) ¶¶ 24-25; Exs. 5-9 to Ex. A. Each of these policies also have their own links on other parts of the website. Ex. A (Smatko Dec) ¶ 25.

Both the hyperlinked terms and conditions language and the box that the customer must affirmatively check to agree to those terms and conditions are located directly above the "place order" button:



> Your personal data will be used to process your order, support your experience throughout this website, and for other purposes described in our **privacy policy**.
>
> ☐ I have read and agree to the website **terms and conditions** *
>
> PLACE ORDER

Ex. A (Smatko Dec) ¶ 26; Ex. 5 to Ex. A. While other parts of the Website have changed or been redesigned over time, this specific placement of the checkbox and hyperlinked terms and conditions directly above the "place order" button has consistently remained this way since the Website's inception. *Id.* ¶ 27.

**B.    Ms. Makuc Agreed to the Website's Terms and Conditions—Including the Arbitration Agreement—When She Purchased Her Electric Tricycle.**

In April 2021, Ms. Makuc purchased an electric tricycle for $2,950.27 through the Website. Dkt. 1 ¶¶ 32-33. Like every customer purchasing a product through the Website, to complete her purchase, Ms. Makuc was required to affirmatively check the box confirming that "I have read and agree to the website **terms and conditions***". Ex. A

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

Snell & Wilmer

L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

(Smatko Dec) ¶ 31. Ms. Makuc could not have placed her order and purchased the electric tricycle through the Website without affirmatively checking the box confirming that "I have read and agree to the website **terms and conditions\***". *Id.* ¶ 32. Pursuant to the Arbitration Agreement, as part of the terms of Ms. Makuc's purchase, she "automatically and expressly waive[d] any right [she] may have to arbitrate a class action and automatically agree[d] to these terms." Ex. A (Smatko Dec) ¶ 17; Ex. 4 to Ex. 1.

In addition to the Arbitration Agreement, the terms and conditions hyperlinked to other company policies, including "Our Policy" (which outlines, among other things, the company's return policy, warranty policy, electronic check processing, etc.) and the Shipping Delivery Policy. Ex. A (Smatko Dec) ¶ 28; Ex. 1 to Ex. A. For example, "Our Policy" made clear that, among other things, defective products "must be returned within 7 days", "[r]eturns are never accepted on products that have been used", and the customer authorizes the company for "Check payments … to be converted into electronic checks". Ex. A (Smatko Dec) ¶ 29; Ex. 1 to Ex. A. Also, the Shipping Delivery Policy disclosed, among other things, that the company "reserves the right to debit and re-debit customer's account, and customer automatically agrees to these fees with the purchase and acceptance of the product if: … the freight company must use lift gate to deliver item. Cost: $60.00 - $175.00". Ex. A (Smatko Dec) ¶ 30; Ex. 2 to Ex. A.

## C.   Despite the Arbitration Agreement and Class Waiver, Ms. Makuc Filed a "Class Action Complaint and Jury Demand."

On March 22, 2024, Ms. Makuc filed a Class Action Complaint and Jury Demand (the "Complaint"). Dkt. 1. Ms. Makuc, on behalf of a purported class of others similarly situated, asserted claims for (1) violation of the Massachusetts Consumer Protection Act (against Gabor Smatko and Mobilityless, LLC), (2) violation of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO") (against Gabor Smatko and Monica Smatko), (3) conspiracy (against all Defendants), and (4) fraudulent transfer (against all Defendants). *Id.* at 13-29.

Snell & Wilmer

L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

In the Complaint, Ms. Makuc alleges, among other things, that her electronic tricycle was defective and "did not operate as advertised", Mobilityless, LLC refused to exchange it or give a refund, and Mobilityless, LLC made an "unauthorized withdrawal" from Ms. Makuc's bank account for a $125.00 "liftgate fee" associated with the delivery of her electronic tricycle. *See* Dkt. 1 ¶¶ 32-50. Ms. Makuc seeks certification of a single class of "All persons within the United States, other than any of Plaintiff's counsel, who (1) purchased merchandise from Mobilityless, LLC through its [W]ebsite … (2) during the time period from September 2018 to December 31, 2021; (3) who were charged a lift gate fee deposited to the Mobilityless, LLC bank account at TD Bank ending in 7648." (the "<u>Class</u>"). *Id.* ¶ 55.

Ms. Makuc also alleges that Gabor Smatko and Monica Smatko purportedly violated RICO. *See* Dkt. 1 ¶¶ 76-103. Specifically, Ms. Makuc alleges that Gabor Smatko, as the founder, owner, and operator of Mobilityless, LLC, among other things, developed a scheme to defraud customers of Mobilityless, LLC with the intent to defraud and engaged in wire fraud by making "unauthorized transfers of customer money deposited in accounts operated and/or controlled by Mr. Smatko and his businesses." *See id.* ¶¶ 82-87. Ms. Makuc also alleges that Monica Smatko "knowingly agree[d] to facilitate and/or aid Gabor Smatko in the operation or management of the enterprise" by "form[ing] multiple corporate entities at the instruction of Gabor Smatko", and that the "corporations received proceeds of the racketeering enterprise and assisted in the laundering of money", which "was all done in furtherance of the racketeering enterprise." *See id.* ¶ 94.

Ms. Makuc also asserts conspiracy and fraudulent transfer claims against all Defendants on the premise that all Defendants allegedly conspired together to fraudulently transfer assets. *See* Dkt. 1 ¶¶ 104-134. Ms. Makuc alleges that monies that Mobilityless, LLC and Mobilitytrend, LLC received from customers purchasing products through the Website were then transferred to other entities created and controlled by Gabor Smatko or Monica Smatko and used to purchase real property in Arizona. *See id.* ¶¶ 108, 112-113, 124-126, 132-133.

1    Plaintiff seeks actual, statutory, and treble damages, certification of the Class, and

2    costs and attorneys' fees. *See* Dkt. 1 at 29.

## II.    ARGUMENT

4    The Court should grant this Motion and compel arbitration for several reasons. The

5    Arbitration Agreement is governed by the FAA because it evidences a transaction involving

6    commerce and the express terms provide that the FAA governs. Accordingly, the federal

7    policy favoring arbitration applies, and the Arbitration Agreement shall be construed

8    liberally in favor of arbitration. The Arbitration Agreement is enforceable, and each of

9    Plaintiff's claims falls within the scope of the Arbitration Agreement. Each of the

10   Defendants is also entitled to compel arbitration, even non-signatories. Because Plaintiff's

11   claims must be arbitrated, the Court should stay this action pending arbitration.

### A.    The FAA Mandates Enforcement of the Arbitration Agreement.

13   The FAA preempts state law and mandates that arbitration agreements "shall be

14   valid, irrevocable, and enforceable." 9 U.S.C. § 2. The FAA applies to any arbitration

15   agreement "evidencing a transaction involving commerce." *Id.* The Supreme Court has

16   expansively construed the phrase "involving commerce," interpreting it as extending the

17   FAA's reach to the full limit of Congress' Commerce Clause power. *Allied-Bruce Terminix*

18   *Cos. v. Dobson*, 513 U.S. 265, 268 (1995).

19   There is no question that the FAA applies to the Arbitration Agreement. Indeed, the

20   Arbitration Agreement expressly provides that it "is governed by the [FAA], 9 U.S.C. § 1

21   et seq." and "evidences a transaction involving commerce". Ex. A (Smatko Dec) ¶ 13; Ex.

22   4 to Ex. A. Plaintiff also alleges that products from the Website were sold across the

23   country, including to Ms. Makuc in Massachusetts. *See* Dkt. 1 ¶¶ 3, 58, 81, 85.

24   "The principal purpose of the FAA is to ensure that private arbitration agreements

25   are enforced according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333,

26   344 (2011) (internal quotations and citations omitted). The FAA "embod[ies] a national

27   policy favoring arbitration.'" *Id.* at 346 (citation omitted); *Preston v. Ferrer*, 552 U.S. 346,

28   353 (2008). The Supreme Court has interpreted the FAA "as reflecting both a 'liberal

Snell & Wilmer

L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

federal policy favoring arbitration' . . . and the 'fundamental principle that arbitration is a matter of contract.'" *Concepcion*, 563 U.S. at 339 (internal citations omitted). Thus, the FAA requires courts to "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985).

The Supreme Court has instructed courts, consistent with Congress' intent, to "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Preston*, 552 U.S. at 357 (citation omitted). This is because "[a] prime objective of an agreement to arbitrate is to achieve streamlined proceedings and expeditious results." *Concepcion*, 563 U.S. at 346 (internal quotations and citation omitted). Accordingly, this Court should grant the Motion if Defendants establish that: (1) Plaintiff entered into the Arbitration Agreement and (2) Plaintiff's claims fall within the scope of the Arbitration Agreement. *See* 9 U.S.C. §§ 3, 4; *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) ("The [district] court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.").

## B.    An Enforceable Arbitration Agreement Exists.

While the FAA and strong federal policy favors arbitration, Arizona law applies to determine whether the Arbitration Agreement is enforceable. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (federal courts "apply ordinary state-law principles that govern the formation of contracts" in determining enforceability of an arbitration agreement); *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1093 (9th Cir. 2014). "The 'federal policy favoring arbitration, however, is taken into consideration even in applying ordinary state law.'" *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005) (quoting *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 498 (6th Cir. 2004)).

The Arbitration Agreement, like other web-based arbitration agreements, is enforceable as a clickwrap agreement. A clickwrap agreement (or "click-through") is one "in which website users are required to click on an 'I agree' box after being presented with a list of terms and conditions of use". *Nguyen v. Barnes & Noble Inc.*, 763 F. 3d 1171, 1175-

Snell & Wilmer

L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

76 (9th Cir. 2024). "In that scenario, the consumer has received notice of the terms being offered and, in the words of the Restatement, knows or has reason to know that the other party may infer from his conduct that he assents to those terms." *Berman v. Freedom Financial Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022) (internal quotations and citation omitted). "As a result, courts have routinely found clickwrap agreements enforceable." *Id.*; *see Anderson v. Amazon.com, Inc.*, 478 F. Supp. 3d 683, 697-98 (M.D. Tenn. 2020) ("Federal courts have consistently upheld these types of agreements, which are known as clickwrap agreements.") (citing cases).

Here, the Arbitration Agreement is an enforceable clickwrap agreement because (1) Plaintiff (and every customer that purchases a product through the Website) is required to affirmatively click the box confirming "I have read and agree to the website **terms and conditions\***", (2) the box is not automatically checked, (3) the phrase "terms and conditions" is bolded and hyperlinks to the Website's policies, including the Arbitration Agreement, (4) when the phrase "terms and conditions" is clicked on, each of the Website's policies appears in a window directly above, and (5) both the check box and the bolded phrase "terms and conditions" are located directly above the "Place Order" button to complete the customer's purchase. *See* Ex. A (Smatko Dec) ¶¶ 18-27. Because Plaintiff was required to affirmatively check (click) the box confirming "I have read and agree to the website **terms and conditions\***", and she could not have proceeded with the "Place Order" button and complete her purchase without doing so, *see* Ex. A (Smatko Dec) ¶¶ 31-32, Plaintiff agreed to the Website's terms and conditions, including the Arbitration Agreement.

"Federal courts likewise have recognized the general enforceability of similar online agreements that require affirmative user assent." *See*, *e.g.*, *In re Holl*, 925 F.3d 1076, 1084-85 (9th Cir. 2019) ("Here, there is no question Holl affirmatively assented to the UPS My Choice Service Terms. He checked a box acknowledging as much."); *Houtchens v. Google LLC*, 649 F. Supp. 3d 933, 940-42 (N.D. Cal. 2023) (granting motion to compel arbitration because the hyperlinks to the terms of service provided plaintiff "reasonably conspicuous notice" of the terms); *Abidzadeh v. Best Buy, Co.*, Case No. 20-cv-006257-JSW, 2021 WL

Snell & Wilmer

L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

4440313, at *5 (N.D. Cal. Mar. 2, 2021) (granting motion to compel arbitration and dismissing matter because directly above the "Sign In" button was the following text: "By continuing you agree to our Terms and Conditions, our Privacy Policy, and the My Best Buy® Program Terms"); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 912 (N.D. Cal. 2011) ("Because Plaintiff was provided with an opportunity to review the terms of service in the form of a hyperlink immediately under the 'I accept' button and she admittedly clicked 'Accept,' … a binding contract was created here.").

Even if Plaintiff was not required to affirmatively check a separate consent box agreeing to the Website's terms and conditions—she was—the Arbitration Agreement would still be enforceable. For example, in *Oberstein v. Live Nation Entertainment, Inc.*, the Ninth Circuit applied both California and Massachusetts law to compel arbitration even though the arbitration agreement was not a pure clickwrap agreement. 60 F.4th 505 (9th Cir. 2023). In *Oberstein*, website users of Ticketmaster and LiveNation (who purchased tickets to attend various events) were "presented with a confirmation button above which text informs the user that, by clicking on this button, 'you agree to our Terms of Use.'" *Id.* at 515. To place an order for tickets, "a user must click on the 'Place Order' button, directly above which is language stating: 'By continuing past this page and clicking 'Place Order', you agree to our Terms of Use.'" *Id.* at 515-16. The hyperlink was in a different color font, and when clicked on, it transferred the user to the terms, which contained the arbitration provision. *Id.* at 516. There was not a separate check box other than the "Place Order" button for proceeding. The Ninth Circuit affirmed the district court's order compelling arbitration because "a reasonable user would have seen the notice and been able to locate the Terms via hyperlink." *Id.* at 516-17 (holding that the website "presented their Terms so as to be reasonably conspicuous to the average user").

Similarly, here, the language "I have read and agree to the website **terms and conditions***" is located directly above the "Place Order" button, and the bolded terms and conditions hyperlink to the Website's policies, including the Arbitration Agreement. Ex. A (Smatko Dec) ¶¶ 19-23, 26; Exs. 5-9 to Ex. A. This presentation and layout provides every

Snell & Wilmer

L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

user—including Plaintiff—with reasonably conspicuous notice of the terms and conditions that apply with each purchase of a product from the Website. Accordingly, the Arbitration Agreement is enforceable, Plaintiff must arbitrate her individual claims, and Plaintiff cannot assert any claims as a class representative or class member.

### C.   Plaintiff's Claims Fall Within the Scope of the Arbitration Agreement.

The Arbitration Agreement "applies to any legal dispute, past, present or future, arising out of or related to Customer … purchasing any of our products from us ('Company') or relationship with any of its agents, employees, affiliates, successors, assigns, subsidiaries or parent companies (each of which are third party beneficiaries of this Agreement)". Ex. A (Smatko Dec) ¶ 13; Ex. 4 to Ex. A. The Arbitration Agreement is also "intended to apply to the resolution of disputes that otherwise would be resolved in a court of law, and therefore this Agreement requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial." Ex. A (Smatko Dec) ¶ 14; Ex. 4 to Ex. A. Even disputes about the "scope, formation, [and] enforceability" of the Arbitration Agreement were reserved for arbitration. Ex. A (Smatko Dec) ¶ 15; Ex. 4 to Ex. A.

Plaintiff's claims clearly fall within the scope of arbitration under the Arbitration Agreement. This legal dispute arises out of or relates to Ms. Makuc's purchase of an electric tricycle from the Website. Ms. Makuc's consumer fraud and RICO claims are wholly premised on her purchase of the electric tricycle and her allegations that, as a result of that purchase, unauthorized withdrawals occurred from her bank account as a result of her purchase. *See* Dkt. 1 ¶¶ 48-50, 69, 87. Ms. Makuc also alleges that Mobilityless, LLC conspired with the other Defendants to fraudulently transfer assets by "making unlawful withdrawals/transactions from customer/victim bank accounts, and collecting fees under false pretenses", which were then allegedly transferred to "other corporate entities owned by the individual Defendants, in furtherance of the conspiracy to hide assets from creditor/victims." *See id.* ¶¶ 108, 124, 127. Accordingly, all of Plaintiff's claims against Defendants clearly "aris[e] out of or relate[] to" Plaintiff's purchase of her electric tricycle

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

from the Website, so each of her claims fall within the scope of the Arbitration Agreement.

Plaintiff's claims also involve the relationship of Mobilityless, LLC's "agents, employees, affiliates, successors, assigns, subsidiaries or parent companies (each of which are third party beneficiaries of this Agreement)". Plaintiff asserts each of her claims against Gabor Smatko (Mobilityless, LLC's principal and sole employee). Plaintiff also alleges that Monica Smatko "facilitate[d] and/or aid[ed] Gabor Smatko in the operation or management of the enterprise", and "specifically appeared in Court to assist Gabor Smatko" in small claims lawsuits against customers of Mobilityless, LLC. *See* Dkt. 1 ¶ 94. Accordingly, Plaintiff's claims against both Gabor Smatko and Monica Smatko concern the relationship of Mobilityless, LLC's alleged "agents" and "employees."

Plaintiff's conspiracy and fraudulent transfer claims against all of the Defendants also implicate the "relationship" of all of the Defendants. Plaintiff specifically alleges that Gabor Smatko and Monica Smatko "formed and operated more than a dozen related businesses" that "maintain[] no meaningful separation between the entities", *see id.* ¶ 12-14, and repeatedly refers to the other entity Defendants as "related companies." *See id.* ¶¶ 113, 124. The whole premise of Plaintiff's conspiracy and fraudulent transfer claims is that Gabor Smatko and/or Monica Smatko formed, owned, and operated each of the entity Defendants, and that they allegedly used these companies to "directly transfer[] assets between the entities to hide assets", "hide assets from creditor/victims", and "transfer … assets from Mobilityless, LLC to the other corporate entities … with the intent to hinder, delay, or defraud the Plaintiff creditors." *See id.* ¶¶ 106-114, 127, 132. Accordingly, for this separate and additional reason, Plaintiff's claims fall within the scope of the Arbitration Agreement, and she must arbitrate each of her individual claims against Defendants.

### D.   <u>The Non-Signatory Defendants Are Entitled to Compel Arbitration.</u>

Each of the Defendants are entitled to compel arbitration for at least two reasons: (1) as third-party beneficiaries and/or (2) under alternative estoppel.

<u>First</u>, as explained in Section III.C., *supra*, Plaintiff's claims fall within the scope of the Arbitration Agreement because, among other reasons, this dispute concerns

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

Mobilityless, LLC's "relationship with any of its agents, employees, affiliates, successors, assigns, subsidiaries or parent companies (**each of which are third party beneficiaries of this Agreement**)". Ex. 4 to Ex. A at 6 (emphasis added). Third-party beneficiaries of an arbitration agreement are entitled to compel arbitration. *See BioD, LLC v. Amnio Tech., LLC*, 2014 WL 268575, at *3 (D. Ariz. Jan. 24, 2014) ("[A] third party beneficiary to a contract is subject to and bound by an arbitration provision contained in that contract.") (citation omitted). Because Plaintiff alleges that Gabor Smatko and Monica Smatko are either agents or employees of Mobilityless, LLC, *see* Dkt. 1 ¶¶ 4, 12, 68, 82, 94, and that the other entity Defendants are "related companies" to Mobilityless, LLC, *see id.* ¶¶ 12-14, 113, 124, each of the Defendants are entitled to compel arbitration under the express terms of the Arbitration Agreement as intended third-party beneficiaries.

<u>Second</u>, Ms. Makuc is estopped from trying to avoid arbitration by including claims against non-signatory Defendants. *See Sun Valley Ranch*, 294 P.3d at 134-35 (vacating order denying motion to compel brought by non-signatories to arbitration agreement and remanding for trial court to compel arbitration). This is because a "willing non-signatory seeking to arbitrate with a signatory [to an arbitration agreement] that is unwilling may do so under what has been called an alternative estoppel theory, which takes into consideration the relationships of persons, wrongs, and issues[.]" *Id.* at 134 (citation omitted). As the *Sun Valley Ranch* court explained:

> A nonsignatory can enforce an arbitration clause against a signatory to the agreement in several circumstances. One is when the relationship between the signatory and nonsignatory is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided. Another is when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting [its] claims against the nonsignatory. When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate.

*Id.* at 134-135 (quoting *CD Partners, LLC v. Grizzle*, 424 F.3d 795, 798 (8th Cir. 2005)).

Snell & Wilmer

L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

In *Sun Valley Ranch*, the non-signatory defendant was entitled to compel arbitration because his alleged "conduct is intertwined with that of other defendants who signed the [arbitration] [a]greement." *Id.* at 135. The *Sun Valley Ranch* court also approvingly cited *CD Partners*, which reversed denial of a motion to compel arbitration and remanded to compel arbitration of claims against non-signatories where their alleged conduct was "intertwined" with that of signatory defendants. 424 F.3d at 798-99 ("The relationship between signatory [defendant] and the nonsignatory appellants is a close one. The tort allegations against the three appellants all arise out of their conduct while acting as officers of [defendant]. Evisceration of the underlying arbitration agreement will be avoided only by allowing the three principals to invoke arbitration.").

Multiple courts have since applied *Sun Valley Ranch* to require a plaintiff signatory to arbitrate with willing non-signatories under an alternative estoppel theory. *See*, *e.g.*, *Shivkov v. Artex Risk Solutions Inc.*, No. CV-18-04514-PHX-SMM, 2019 WL 8806260, at *13 (D. Ariz. Aug. 5, 2019) (granting motion to compel arbitration) *aff'd Shivkov v. Artex Risk Solutions, Inc.*, 974 F.3d 1051 (9th Cir. 2020); *Bonner v. Michigan Logistics Inc.*, 250 F. Supp. 3d 388, 397-99 (D. Ariz. 2017) (compelling arbitration against non-signatory defendants where plaintiff alleged all defendants were a "common enterprise" with "common management" and "common ownership" that "commingled funds"); *Tradeline Enterprises Pvt. Ltd. v. Jess Smith & Sons Cotton, LLC*, LA CV15-08048 JAK (RAOx), 2016 WL 7444857, at *12, 14 (C.D. Cal. July 29, 2016) (granting motion to compel arbitration filed by two non-signatory defendants because the "principle was recognized in *Sun Valley*, through its reference to when the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided") (internal quotations and citations omitted).

Similarly, here, the relationship of "persons, wrongs, and issues" are close and so intertwined that arbitration with all Defendants must occur lest the Arbitration Agreement be effectively eviscerated. Indeed, the whole premise of Plaintiff's claims for conspiracy

and fraudulent transfer against all of the Defendants is that Gabor Smatko and/or Monica Smatko formed, owned, and operated each of the entity Defendants, and that they allegedly used each of the entity Defendants to "directly transfer[] assets between the entities to hide assets", "hide assets from creditor/victims", and "transfer … assets from Mobilityless, LLC to the other corporate entities … with the intent to hinder, delay, or defraud the Plaintiff creditors." *See* Dkt. 1 ¶¶ 106-114, 127, 132. Plaintiff also alleges that Gabor Smatko and Monica Smatko "formed and operated more than a dozen related businesses" that "maintain[] no meaningful separation between the entities", *see id.* ¶ 12-14, and repeatedly refers to the other entity Defendants as "related companies." *See id.* ¶¶ 113, 124. Accordingly, Ms. Makuc's Complaint makes clear that the relationship between all of the Defendants is "sufficiently close that only by permitting the nonsignatory to invoke arbitration may eviscerate of the underlying arbitration agreement between the signatories be avoided." *See Sun Valley Ranch*, 294 P.3d at 134-135 (citation omitted).

Furthermore, Plaintiff's claims "make[] reference to" the Website's various policies, which Plaintiff expressly agreed to. For example, Plaintiff alleges unauthorized withdrawal of certain fees, including the liftgate fee, even though she agreed to the Shipping Delivery Policy, which expressly provided that the "Company reserves the right to debit and re-debit customer's account, and customer automatically agrees to these fees with the purchase and the acceptance of the product if: … the freight company must use lift gate to deliver item. Cost: $60.00 - $175.00". Ex. A (Smatko Dec) ¶ 30; Ex. 2 to Ex. A. Plaintiff also complains that an "unauthorized electronic check [was] drawn from [her] bank account", "Defendants failed to publish a clear return and/or refund policy", "Defendants failed to honor its warranty agreements", and "Defendants routinely charged customers additional unauthorized fees", *see* Dkt. 1 ¶¶ 48, 69, even though the Website's policies and agreements clearly refute such allegations (for example, "Our Policy" makes clear that the "customer authorizes the Company for [] Check payments … to be converted into electronic checks"). Ex. A (Smatko Dec) ¶ 29; Ex. 1 to Ex. A. Notwithstanding the parties' dispute about the merits of Plaintiff's claims, it is clear that— even though she does not assert a claim for

Snell & Wilmer

L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

breach of contract—Plaintiff's claims arise out of and/or directly relate to the Website's written policies and agreements, which Plaintiff expressly agreed to. Thus, Defendants are also entitled to compel arbitration against Plaintiff under an alternative estoppel theory.

### E. A Stay of This Action is Appropriate Because Plaintiff Must Arbitrate Her Claims.

The Court should stay this action pending arbitration. The FAA provides that once the suit is referred to arbitration, a court "**shall** on application of one of the parties **stay the trial of the action** . . ." 9 U.S.C. § 3. (emphasis added). This section requires courts to stay judicial proceedings, upon application of a party, if the court determines that the matter raised is one which should have been referred to arbitration. Because the Arbitration Agreement requires Plaintiff to arbitrate her claims, Section 3 applies, and this case should be stayed. The Court may also nonetheless stay this action under its own inherent powers in the interest of judicial economy and efficiency. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.").

## IV.   CONCLUSION

By affirmatively checking the box confirming that "I have read and agree to the website **terms and conditions\***" to complete her purchase through the Website, Ms. Makuc expressly agreed to and entered into the Arbitration Agreement. Each of Ms. Makuc's claims clearly fall within the scope of the Arbitration Agreement. Defendants may also compel arbitration of each of Plaintiff's individual claims against them under either an alternative estoppel theory or as express intended third party beneficiaries under the Arbitration Agreement.

Thus, for the foregoing reasons, Defendants respectfully request that the Court (1) compel arbitration of each of Ms. Makuc's individual claims against Defendants and (2) stay this action pending arbitration.

1    DATED this 1st day of May, 2024.

2                                              SNELL & WILMER L.L.P.

3

4                                    By: _s/  Anthony T. King_____
                                         Anthony T. King
5                                        Megan Carrasco
                                         One East Washington Street
6                                        Suite 2700
                                         Phoenix, Arizona 85004-2556
7                                        *Attorneys for Defendants Gabor*
                                         *Smatko, Monica Smatko, Mobilityless,*
8                                        *LLC, Epizontech, LLC, Fountainmoons,*
                                         *LLC, Hillsunion, LLC, Mobilitytrend,*
9                                        *LLC & Mogavike2020, LLC*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **CERTIFICATE OF SERVICE**

2

I hereby certify that I electronically transmitted the attached document to the Clerk's

3

Office using the CM/ECF System for filing, and for transmittal of a Notice of Electronic

4

Filing to all CM/ECF Registrants.

5

*s/ Martin Lucero*

6

7

4895-2934-1879

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

# EXHIBIT A

Anthony T. King (#027459)
Megan Carrasco (#037109)
SNELL & WILMER L.L.P.
One East Washington Street
Suite 2700
Phoenix, Arizona 85004-2556
Telephone: 602.382.6000
Facsimile: 602.382.6070

E-Mail: aking@swlaw.com

*Attorneys for Defendants Gabor Smatko, Monica
Smatko, Mobilityless, LLC, Epizontech, LLC,
Fountainmoons, LLC, Hillsunion, LLC,
Mobilitytrend, LLC, & Mogavike2020, LLC*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mary Makuc, and all similarly situated persons,<br><br>        Plaintiff,<br><br>v.<br><br>Gabor Smatko, Monica Smatko, Mobilityless, LLC, Epizontech, LLC, Fountainmoons, LLC, Hillsunion, LLC, Mobilitytrend, LLC, Mogavike2020, LLC, and John Does I-X,<br><br>        Defendants. | No. 2:24-cv-00633-ROS<br><br>**Declaration of Gabor Smatko in Support of Motion to Compel Arbitration** |

I, Gabor Smatko, declare as follows:

1.      I am over the age of 18, and I am competent to make this declaration. I make this declaration based upon my personal knowledge of the matters set forth below. If called as a witness to testify regarding these facts, I could and would do so competently.

2.      I formed Mobilityless, LLC as a Massachusetts limited liability company in September 2018. I was the sole member and manager of Mobilityless, LLC, and Mobilityless, LLC was essentially owned and operated solely by me.

3.      In 2018, I was involved in and have personal knowledge about the creation of

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

the website www.mobility4less.com (the "Website"), which was owned and operated by Mobilityless, LLC.

4. Through the Website, Mobilityless, LLC sold a variety of products, including but not limited to, affordable electric vehicles, such as electric bicycles, tricycles, and wheelchairs.

5. Mobilityless, LLC was "committed to making mobility safer, smarter, and more enjoyable for everyone."

6. Since its launch in 2018, the Website has had each of the following policies and agreements posted on the website: (1) "Our Policy" (which outlines, among other things, the company's return policy, warranty policy, electronic check processing, etc.); (2) Shipping Delivery Policy; and (3) a "Privacy Policy".

7. A true and correct printout copy of "Our Policy" is attached as Exhibit 1.

8. A true and correct printout copy of the Shipping Delivery Policy is attached as Exhibit 2.

9. A true and correct printout copy of the Privacy Policy is attached as Exhibit 3.

10. In June 2020, I added to the Website a "Waiver" policy, specifically entitled "Dispute Resolution Agreement & Class Action Waiver" (the "Arbitration Agreement").

11. A true and correct printout copy of the "Waiver Policy" and Arbitration Agreement is attached as Exhibit 4.

12. The Arbitration Agreement has remained the exact same since it was added to the Website in June 2020.

13. The Arbitration Agreement provides that it "is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq.", "evidences a transaction involving commerce", and "applies to any legal dispute, past, present or future, arising out of or related to Customer … purchasing any of our products from us ("Company") or relationship with any of its agents, employees, affiliates, successors, assigns, subsidiaries or parent companies (each of which are third party beneficiaries of this Agreement")." Ex. 4.

14.     The Arbitration Agreement "is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law, and therefore this Agreement requires that all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial." Ex. 4.

15.     Such disputes expressly included, but were not limited to, "disputes arising out of or relating to interpretation or application of this Agreement, including the scope, formation, enforceability, revocability or validity of the Agreement or any portion of the Agreement." Ex. 4.

16.     Pursuant to the Arbitration Agreement, customers purchasing products via the Website, including Plaintiff, waived and "give up [her] legal right to participate as a class representative or class member of any class claim … including any right to class arbitration or any consolidation of individual arbitrations." Ex. 4.

17.     The Arbitration Agreement provides to each customer that "with your purchase, you automatically and expressly waive any right you may have to arbitrate a class action and automatically agree to these terms." Ex. 4.

18.     Each customer who places an order for a product through the Website must enter their name, address, and other information.

19.     Before being able to place the order, the customer must click a box confirming that "I have read and agree to the website **terms and conditions**\*" (bold emphasis in original).

20.     A true and correct printout copy of the place order page from the Website is attached as Exhibit 5.

21.     The box is not automatically checked, and each customer must affirmatively click it to place an order through the Website. Ex. 5.

22.     The phrase "term and conditions" is bolded and hyperlinks to the Website's various policies.  Ex. 5.

23.     When the customer clicks on "terms and conditions", all of the Website's various terms and conditions pop up in a window just above the check box so that the

customer can scroll through and read each individual policy. Each of the terms of conditions, including the "Waiver" policy, specifically entitled "Dispute Resolution Agreement & Class Action Waiver" (*i.e.*, the Arbitration Agreement), can be accessed and read in this manner.

24.     True and correct printout copies of the place order page from the Website, after a customer clicks on the phrase "terms and conditions", showing each individual policy, are attached as Exhibits 6, 7, 8, and 9.

25.     Each of these policies also have their own links on other parts of the website. *See* www.mobility4less.com.

26.     Both the hyperlinked terms and conditions language and the box that the customer must affirmatively check to agree to those terms and conditions are located directly above the "place order" button:

Your personal data will be used to process your order, support your experience throughout this website, and for other purposes described in our **privacy policy**.

☐ I have read and agree to the website **terms and conditions** *

PLACE ORDER

*See* Exs. 5-9.

27.     While other parts of the Website have changed or been redesigned over time, this specific placement of the checkbox and hyperlinked terms and conditions directly above the "place order" button has consistently remained this way since the inception of the Website.

28.     In addition to the Arbitration Agreement, the terms and conditions hyperlink to other company policies, including "Our Policy" (which outlines, among other things, the company's return policy, warranty policy, electronic check processing, etc.) and the Shipping Delivery Policy. *See* Exs. 5-9.

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

29.     "Our Policy" makes clear that, among other things, defective products "must be returned within 7 days", "[r]eturns are never accepted on products that have been used", and the customer authorizes the company for "Check payments … to be converted into electronic checks". Ex. 1.

30.     The Shipping Delivery Policy discloses, among other things, that the company "reserves the right to debit and re-debit customer's account, and customer automatically agrees to these fees with the purchase and acceptance of the product if: … the freight company must use lift gate to deliver item. Cost: $60.00 - $175.00". Ex. 2.

31.     When Plaintiff purchased her electric tricycle through the Website, just like every customer purchasing a product through the Website, to complete her purchase, Plaintiff was required to affirmatively check the box confirming that "I have read and agree to the website **terms and conditions\***".

32.     Plaintiff could not have placed her order and purchased the electric tricycle through the Website without affirmatively checking the box confirming that "I have read and agree to the website **terms and conditions\***".

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 29 day of April, 2024.

Gabor Smatko

4857-6206-5849

Snell & Wilmer

L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

# EXHIBIT 1

Case 2:24-cv-00635-ROS   Document 16-1   Filed 05/01/24   Page 27 of 89

 FINANCING AVAILABLE

• Miami - FL    • Los Angeles - CA    • Phoenix - AZ    • Houston - TX    • Chicago - IL    • New York - NY

☰ MENU

# MobilityX



**MUST READ**

# Our Policy

## Buy Today, Pay Tomorrow

We encourage you to read each policy thoroughly to ensure a clear understanding of our terms and procedures.

## Explore our innovative solutions

Thank you for choosing Mobility X—we look forward to serving you.

**PURCHASER MUST READ**

## Understand And Agree To The Following Store Policy.

You, the Purchaser must read, understand and agree to the following store policy. By placing an order, you are automatically understand and agree to the following:

- Every communication between You and the Company must be made in writing.

## Return Policy

- We accept returns on defective products, parts, or accessories for seven days after purchase. The Actual Shipping and handling fees are not refundable. If the product was advertised with free shipping than the actual shipping cost, which is not free, will be calculated.

- Defective products, parts, or accessories parts must be returned within 7 days.

- Any defect, or in the event the item is not as described, the purchaser has the legal obligation to report such within seven days of delivery in writing, either via email or regular usps registered mail.

- Any return of non-defective items, parts, or accessories must be approved by the seller and will be subject to a 25% inspection and repackaging fee. Damages that occur during shipping are the responsibility of the individual returning the bike or parts and will be deducted from any refund due.

- Returns are never accepted on products that have been used. All returns must be in new, unopened condition. No returns on special orders, customer made or financed products.

**Warranty Policy**

- Products come with the warranty as noted on the product's page-  that begins on the date of delivery according to the tracking data provided by the shipping company. **Warranty applies to original purchaser and is not transferable.**

- Damage and Shortage Claim: Damage resulting from shipping is the responsibility of the shipping company and the purchaser is responsible for notifying Company at the day of delivery and filing an insurance claim with the shipping company.

- Any item that was received by consignee (customer) without noting any damage/shortage on the delivery manifest is considered to be received without any damage/shortage.

- Any item that was not returned for service within seven days from the date on which it was delivered considered to be free of defect upon arrival.

**Non-merchantibility (usability), or Not as Described**

**Claim:**

- Company must be notified via email within three days of delivery and customer must ask for a Return Authorization. Without such Authorization the return will be refused. No such claim will be accepted after three days. The Return Authorization form must be signed within this three-day period, and the item must be returned within seven days.

**Not-received Claim:**

- Company ships item via traceable shipping methods and tracking numbers will be provided to customers upon request to locate items.

- Warranties are limited to replacement of parts and/or products determined by the Company, at its sole discretion, to be defective..

- The Limited Warranty does not cover or apply to the following: Normal wear and tear; any damage, failure and/or loss caused by accident, shipping, misuse, neglect, abuse and/or failure to follow instructions or warnings as stated on the product or in the applicable owners manual or other printed materials provided with the product; damage, failure and/or loss caused by the use of the product in any other manner for which such products were not specifically designed.

- This warranty does not apply to any products or components, mechanical and/or electrical, which have in any way been altered by any person.  Company will not be liable and/or responsible for any damage, failure or loss caused by any unauthorized service or use of unauthorized parts. For electric powered products, the seller or manufacturer confirms that the advertised speed and range of such items are not guaranteed as they depend on the rider's weight, the terrain, the wind speed and it's direction, the tire inflation etc...

Case 2:24-cv-00653-RCS   Document 1-6   Filed 05/01/24   Page 30 of 89

- Limited Warranty does not cover or apply to any product used for rental.

- The warranty is limited to parts replacement during the warranty period. Warranty is not transferable. Parts or products must be returned to the Company. Labor costs are the responsibility of the customer. Shipping costs are the responsibility of the owner (customer).

- In case the customer requests that the product be returned by company and no damage/shortage was noted on delivery manifest, and/or no claim was filed by customer, than customer agrees to pay for shipping and authorizes company to debit his/her account for such transaction. No warranty on batteries, tires, chargers, brake pads or any such parts that are subject to tear and wear.

- These items are shipped and packed according to the freight companies' policies. Therefore it is the purchaser's responsibility to check the item prior to riding it, make adjustments if necessary.

- For product cancellation, refusal and other non-specified circumstances, see the appropriate section of the warranty and return policy on the main page.

- The manufacturers/sellers of these products reserve their rights to modify, add or remove parts, add or remove features of the items according to their latest research and development without prior notice to the seller and customers.

**Warranty Policy for Accessories**

- Name brand accessories carry the manufacturer warranty. Contact the manufacturer of the name brand parts for warranty coverage.

<u>Cancellations</u>

- Name brand accessories carry the manufacturer warranty. Contact the manufacturer of the name brand parts for warranty coverage.

<u>Refused/Returned items</u>

- Any order that has been shipped and refused/returned by consignee will have the 25% restock fee and the actual UPS (or other shipping co.) published two-way shipping charges with the max. of 30% discount – even if the item was offered with the free promotional shipping. We do not guarantee on what day your item will arrive since it will go through many parties until it reaches you. However, we can email your tracking number so you can calculate the date of arrival. Customer automatically agrees to have his/her account debited for any cancellations/returns/refused fees.

## Refund Check Policy

- Any type of refunds, including but not limited to cancellations, refused items, etc.. will be made by company check in 14 days from the date the item is received back in our warehouse. If the product did not leave our warehouse, it will also be 14 days to issue the refunds.

## Convenience Fees, Accessorial Taxes

- We have to purchase extra packaging materials, staples, tapes, pallets etc. in order to have these items shipped to you. To cover such expenses, we may charge you a small percentage ( 4-8%) convenience fee that may be called convenience fee or accessorial "tax" that is payable to our company.

## Product Upgrade

- Company reserves the right to modify products without prior notification to purchaser, and ship such items with no addition costs.

## Electronic Check Processing

- Customer authorizes company for (1) Check payments received via text, email, online form etc... to be converted into electronic checks. Those checks may have a different check number and/or dollar amount than the ones received, but the dollar amount is either the same or less than the Total price shown in your email confirmation, and never exceeds the Total price. Some received checks from customers can have the $1.00 amount for the sole purpose of providing us with the correct routing and account numbers. (2) Converted checks may have the customer's "Authorized Signature Facsimile"

Case 2:24-cv-00653-RJS Document 161 Filed 05/01/24 Page 32 of 89

signature, created by the company's officer/manager/representative on behalf of the customer, showing such person as the Signer on the optional Signature Certificate.

## Layaway information:

- There are no extra free items offered with layaway orders. Please check the layaway order page for policy governing this type of orders.

## Privacy

- All of your information is kept confidential. We do not provide any of your purchase, registration, or email information to third parties.





# MobilityX

We're committed to making mobility safer, smarter, and more enjoyable for everyone.

Case 22-24 cv-00653-RJS Document 161 Filed 05/01/24 Page 34 of 89

## Quick links

Why Us

Financing

Layaway

Policy

Shipping Delivery

Waiver

## Shop

Products

Parts

Cart

Checkout

© 2024 All Rights Reserved. MobilityX

## Products

Electric Scooters

Electric Tricycles

Electrical Bicycles

Electric Wheelchairs

Low-Temp Freezers

## Get in touch

📞 1-800-936-1790

✉️ support@mobility4less.com

📍 MIAMI - FL LOS ANGELES - CA PHOENIX - AZ HOUSTON - TX CHICAGO - IL NEW YORK - NY

Developed by **CV Infotech**

# EXHIBIT 2

Case 2:24-cv-00653-RCS   Document 161   Filed 09/04/24   Page 36 of 89

 FINANCING AVAILABLE

• Miami - FL    • Los Angeles - CA    • Phoenix - AZ    • Houston - TX    • Chicago - IL    • New York - NY

 MENU

**MobilityX**

 0

MUST READ

# Our
# Shipping Delivery

**Buy Today, Pay Tomorrow**

We encourage you to read each shipping delivery thoroughly to ensure a clear understanding of our terms and procedures.

**Explore our innovative solutions**

Thank you for choosing Mobility X—we look forward to serving you.

PURCHASER MUST READ

## Understand And Agree To The Following Shipping Delivery

## B/1

Address Correction Fees

Orders which have been submitted to us with incorrect address information and have not been corrected before they are shipped will incur a $15.00 charge.

Incorrect address information would include:

> Missing apartment or suite number, wrong house number, missing company name, wrong zip code, multiple addresses listed in the street field, or any other error which would render the package non-deliverable resulting in it being either returned to us, or held for correct address information by the carrier.
> Incorrect addresses may also result in delayed delivery.

*Please double check your shipping address for accuracy*

The $15.00 fee may be charged to us by the shipping company  when packages are non-deliverable due to lack of, or bad information in the address field.  This fee will be billed to the credit card, or check the order was originally placed under.

Small packages, including part orders, have a minimum shipping charges of $18.50 per item which includes the packaging cost.

## B/2

Shipped and Non-returned item Fees, and Shipping Charges

Shipments which have been sent to our customers must be prepaid.

Company reserves the right to debit and re-debit customer's account if:

- company ships an item and customer did not pay,

- an item was shipped by error then company provided free return label with customer but customer did not return item,

- item was shipped but customer reported that any parts of the product was damaged and requested company to replace them without filing a claim with the shipping company first,

- product was shipped to the address provided by customer and said item was returned claimed to be undeliverable,

- item was shipped but customer refused it for any reason. In this case the product is being  returned to shipper and company charges customer for the actual shipping fees and re-ship item,

- customer is in the possession of both the product and the funds.

- order was canceled, refused or returned by customer and the applicable fees were not paid.

If customer has both the product and the funds, and it was determined that the item must be returned then it is his/her responsibility to pack the product according to the shipping company's policy, which includes but not limited to wrapping and palatalizing.

<u>B/3</u>

Lift gates, inside and special services charges when shipping heavy (usually over 150 lbs) items – NOT every freight company has this sevice:

Customer must send his/her payment within ten days for any of such extra services. Free shipping applies to standard freights delivered to customer's location without any other services.

Company reserves the right to debit and re-debit customer's account, and customer automatically agrees to these fees with the purchase and the acceptance of the product if:

- the freight company must use lift gate to deliver item. Cost: $60.00 – $175.00

- the freight company must have inside delivery. Cost: $65.00 -$165.00

- the freight company must make appointment or redelivery. Cost: $160 – $1,250.00

Customer will be charged the actual fee for any of these services as shown on the public UPS freight quote form with the maximum of 30% discount. If any of these fees are remain unpaid, company has the right to refuse any warranty or part request.

## B/4

Returned items

Returned items must bear a RMA or CMA number and must be addressed to the return location instructed by the company.

If no such markings or wrong address is used, company reserves the right to act as a warehouseman for 15 days and after such 15 days the items will be discarded, if no claim is arrived from customer within such period of time. Items will be stored for a maximum of 15 days that were sent to our company for any reasons then they will be discarded.

## B/5

Lost or Missing shipment:

On rare occasions, freight companies can loose or misplace shipments due to the fact that they are still hiring human beings prone to make mistakes. In such cases, they have the right to search for the missing item. If the lost goods are not found usually after the 10th day they notify the consignee and the shipper, so the necessary paperwork can be filed for the claim.

Shipper must pay the freight company even if the goods are lost, therefore consignee cannot cancel the order with the seller in regards to the loss of shipment. However the seller must provide an other item with the consignee after the ten day period.

## B/6

After Delivery Issues

- in case of larger items, such as bikes scooters etc... customers may receive tracking numbers via email in  which they are informed (if not, it is still the receiver's responsibility):

  The shipping company request that you note any damage on the delivery paper at the time of delivery, including any damage to the shipping container!

  If you fail to do so, you will be liable for all the costs related to damage or shortage.

  In such case, you are not eligible to return your product for refund by claiming that it was received damaged or nonoperative. However you can request a Service Return Form for servicing the product. (It is common sense to prevent someone from accidentally or intentionally damage it in order to get a refund)

-  in case of DOA, we must receive your notification via email or fax within 24 hours so we can arrange for the next process.

- if something is missing, we want you to double-check the container first then notify us of such shortages within three days of delivery, so we can resend it to you.

- if something is damaged, we need you to send us the damaged part along with the delivery manifest showing such damage(s) so we can order it from the manufacturer within three days of delivery.

- WE MUST RECEIVE THE ABOVE ITEMS PRIOR TO SENDING YOU REPLACEMENTS, UNLESS YOU PAY FOR THOSE PARTS. IF YOU INSIST ON SENDING YOU SUCH ITEMS PRIOR TO SENDING US BACK YOURS, WE HAVE THE RIGHT TO DEBIT YOUR ACCOUNT FOR THE COST.

- For damages, the freight company is responsible and you may file the claim at your convenience to get compensated. We do not pay for damaged items. Customer understands that he/she cannot request another new product if the present one can be repaired by sending a replacement part. This policy is in place to speed-up the process in which customer can use the item, and eliminate any excessive cost to keep our prices and shipping charges low to everybody.

Case 2:24-cv-00653-RJS-DBP Document 16-1 Filed 09/10/24 Page 42 of 89

- It is the purchaser's responsibility to check the product for proper operation prior to using it, such as adjust tire pressure, check/add oil, charge batteries etc…

- if something  you received is incorrect (such as wrong color, wrong type of charger etc…)  It is the receiver responsibility to check items upon receiving and  must notify company in writing within three days from the date of delivery to receive a replacement. We may ask that  you to send us the incorrect part  so we can inspect and if needed, replace it for you free of charge. After 10 days customer cannot claim that the item received was incorrect. NO CLAIMS will be accepted after 10 days.

## B/7

- All freight shipments will be delivered to consignee's shipping address as provided with us at the time of purchase with the rare exception of the truck not being able to access it. (narrow road, construction, no contracted freight co. to that area etc..) In such case, it's the consignee's responsibility to pick-up the item at the freight company's local terminal, or they will charge you storage fees. All shipments are classified as curbside deliveries, which means that the item is delivered to your address but any other services are not granted, such as moving the item into your living room, removing the crate, training you how to ride your scooter etc..  If you refuse the item due to this reason, it will be considered as "refused" shipment. We reserve the rights to change some of the order details, in case we do not have it on stock at the time of shipping, including but not limited to color, shade, packaging materials etc…

It is also the consignee's responsibility to accept or make arrangements to accept the freight according to schedule of the freight companies normal business hours. Usually they do not deliver before or after hours, or on weekends or holidays.

If you refuse the item due to these reasons, it will be considered as "refused" shipment, and you will be liable for charges as stated in the Policy.

 We reserve the rights to change some of the order details, in case we do not have it on stock at the time of shipping, including but not limited to color, shade, packaging materials etc…

## B/8

- If the item requires any type of assembly, as it is a common requirement with freight shipments, it is the consumer's responsibility to take the product to a local bike/scooter shop for assembly. No claims will be accepted if it is not followed. We do not provide white-glove service, and you did not pay for it either. Giving instructions over the telephone is like having your car fixed without taking it to your mechanic. Some products may have no manual from the manufacturer. In this case, you can find some help on our website under the "ihelp" section. Some video may provide you with visual help only. If the purchaser establishes a claim of "item incomplete" or "item is not operational, faulty etc.." than he or she must take the item to a local bike/scooter shop and send the seller the information of his/her local bike shop's for verification of such claims.

### B/9

- You understand that purchasing a complex product such as an electric trike etc.. on the Internet has its consequences. One of them is that you are paying a lot less than if you were purchasing it at your local store, however it also means that you need to be able to handle issues such as finding help for assembly, adjustments, pumping air in the tire, etc...  It includes but not limited to scenarios in which you need technical help that cannot be administered over the phone or email, or the item does not work for some reason. In such matters you may choose on of the following steps: 1/ check the item yourself 2/ find a nearest shop where they service these types of items  or 3/ you send it to us postage prepaid to us  for repair or replacement before a new one can be shipped out. Occasionally, the freight go through rough handling and some screws, wire connectors can get loose. In such a case, it is the consumer's reponsibility to tighten those parts. If the company provides with a replacement part, customer must install it or if it is not possible must  take the product to a local shop to do such adjustments or installations.

### B/10

- Company reserves the right to ask for original part(s) even if the item which such part(s) were purchased for was obtained from another supplier in case customer buys a part and claims that it does not work or damaged. This policy was established to eliminate abuses when customer wants to use our item and return the original for credit.

### B/11

- In case the product needs to be serviced, customer must ask for a Service Form. This form must be filled out, signed and returned to us within seven days. Any third-party repair must be pre-approved. Without a prior Authorization Number, no payment will be made for repairs.

B/12

- Characteristics of electric powered vehicles: these scooters, bikes and trikes are battery operated and considered "light" vehicles. The speed, power and distance are largely dependent on many factors, such as the weight of the rider, the terrain, the wind conditions, the tire pressure, the charge of the battery etc…therefore such parameters are estimates only. There are no guarantees if the product will climb that particular hill or reaches such speed even when equipped with the powerbooster. Company reserves the rights to ship an alternative product if the ordered item goes out of stock. The alternative item must be of the same or better quality and priced at the same or higher than the original item.

B/13

- Free items: sometimes some free items are offered on the website with purchases of chosen products. This offer is valid for cash purchases (no credit/debit/layaway/financed etc..) only, and these are optional items that are delivered when they are available only. Customer cannot claim these items to be sent if they were not shipped with the original purchase, because they were free and not paid for, and optional depending availability.

 B/14

- Automatic DocuSign Execution: Customer is giving the right and full authorization to automatically create a DocuSign Authorization for his/her purchase(s) by using the data provided on the order form. If a customer's check is emailed, mailed or texted to the company than the data on the check will be used with the correct/actual dollar amount and not the $1.00.  Thereafter it shall be signed on behalf of the consumer with the consumer's signature 3/ execute the document by DocuSign and 4/ forward it to the bank or card issuer. The same authorization applies for all types of payment methods.



Case 2:24-cv-00653-RCS Document 161 Filed 05/01/24 Page 45 of 89



# MobilityX

We're committed to making mobility safer, smarter, and more enjoyable for everyone.

### Quick links

Why Us

Financing

Layaway

Policy

Shipping Delivery

Waiver

### Shop

### Products

Electric Scooters

Electric Tricycles

Electrical Bicycles

Electric Wheelchairs

Low-Temp Freezers

### Get in touch

Case 22-4 cv-00653-RCS Document 161 Filed 09/01/24 Page 47 of 89

Products

Parts

Cart

Checkout

1-800-936-1790

support@mobility4less.com

MIAMI - FL LOS ANGELES - CA PHOENIX - AZ HOUSTON - TX CHICAGO - IL NEW YORK - NY

© 2024 All Rights Reserved. MobilityX

Developed by **CV Infotech**

# EXHIBIT 3



FINANCING AVAILABLE

• Miami - FL   • Los Angeles - CA   • Phoenix - AZ   • Houston - TX   • Chicago - IL   • New York - NY

MUST READ

# Our Privacy

## Buy Today, Pay Tomorrow

We encourage you to read each privacy thoroughly to ensure a clear understanding of our terms and procedures.

## Explore our innovative solutions

Thank you for choosing Mobility X—we look forward to serving you.

PURCHASER MUST READ



MENU




0

Case 2:24-cv-00653-RCS   Document 1-61   Filed 05/01/24   Page 49 of 89

This privacy policy is developed to ensure maximum security to customers during their association with us and later. The privacy policy highlights the usage of information provided by customers and its interpretation at our end and the measures adopted by us to secure it.

We request all our customers to read the privacy policy carefully, before proceeding with the online transactions. By entering into a business relationship with us, a customer is acknowledging that he/she have read, understood and agreed to our terms of this privacy policy.

Changes in Privacy Policy

- We will keep on updating this privacy policy from time to time, in order to accommodate the concerns of our customers and to serve increasing customers in a better way. The revised policy will be applicable as soon as it is updated on the website. Hence, it is very important for each customer to keep on checking our website and the privacy policy periodically to know of any changes.

Collection and Usage of Private Information

We ask customers to provide us details such as-

- Contact information: Name, email address, phone number and shipping address.

- Billing information: Credit card billing address and credit card details.

- We use this personal information to

- Fulfill your order

- To avoid issues or disputes arising due to unforeseen reasons

- Send you your order confirmation

Information Sharing





MENU

- Our corporate partners to facilitate the co-branded or joint services (such as customer service or shipping) that are required to complete an order.

- Detect and prevent fraud, identity theft, and other illegal acts pursued by some customers

- Law officials to comply with some legal proceedings or subpoena

- Government officials to fulfill some information requests

<u>Security</u>

We have always strived to deal with the customer information in a very safe and secure manner by following industrially accepted technological methodologies. As most of our customers use this shopping cart to make purchases, the information provided by them during the trade is secured using Socket Layer Technology or SSL. This technology helps us to secure your private information from hackers and also ensures that all data entered on our website is transferred through our secured Authorize. Net payment gateway, which provides the complex infrastructure and security necessary to ensure secure, fast and reliable transactions.

<u>Additional Policy Information</u>

As you browse epizontech advertising cookies will be placed on your computer so that we can understand what you are interested in. Our display advertising partner, then enables us to present you with retargeting advertising on other sites based on your previous interaction with us. The techniques our partners employ do not collect personal information such as your name, email address, postal address or telephone number. You can visit this  to opt out of AdRoll and their partners targeted advertising.

Customers can review, update or opt-out of future communications as well as correct their personal information by contacting us.

Payment Processing Information



We offer payments via **credit/debit cards**, checks, money order or wire transfer, depending on the product. All transactions are securely submitted and never shared with other than the processing company or as required by law. Checks can be deposited by creating an image of your actual check in which case our software my assign a different check number but keeps the routing and account number intact.

<u>Reviews and Free Speech</u>

- From: http://www.uscourts.gov/about-federal-courts/educational-resources/about-educational-outreach/activity-resources/what-does –
  The First Amendment states, in relevant part, that:
  "Congress shall make no law…abridging freedom of speech."

<u>Freedom of speech includes the right:</u>

- Not to speak (specifically, the right not to salute the flag). West Virginia Board of Education v. Barnette, 319 U.S. 624 (1943).

- Of students to wear black armbands to school to protest a war ("Students do not shed their constitutional rights at the schoolhouse gate."). Tinker v. Des Moines, 393 U.S. 503 (1969).

- To use certain offensive words and phrases to convey political messages. Cohen v. California, 403 U.S. 15 (1971).

- To contribute money (under certain circumstances) to political campaigns. Buckley v. Valeo, 424 U.S. 1 (1976).

- To advertise commercial products and professional services (with some restrictions). Virginia Board of Pharmacy v. Virginia Consumer Council, 425 U.S. 748 (1976); Bates v. State Bar of Arizona, 433 U.S. 350 (1977).

- To engage in symbolic speech, (e.g., burning the flag in protest). Texas v. Johnson, 491 U.S. 397 (1989); United States v. Eichman, 496 U.S. 310 (1990).

<u>Freedom of speech does not include the right:</u>

 MENU

**MobilityX**



- To make or distribute obscene materials. Roth v. United States, 354 U.S. 476 (1957).

- To burn draft cards as an anti-war protest. United States v. O'Brien, 391 U.S. 367 (1968).

- To permit students to print articles in a school newspaper over the objections of the school administration.  Hazelwood School District v. Kuhlmeier, 484 U.S. 260 (1988).

- Of students to make an obscene speech at a school-sponsored event. Bethel School District #43 v. Fraser, 478 U.S. 675 (1986).

- Of students to advocate illegal drug use at a school-sponsored event. Morse v. Frederick, __ U.S. __ (2007).

So you have the right to leave a review according to the law but have no right to incite actions that would harm others.

What does it mean?
If you were unsatisfied with any of the services or products that you had received from our company and left a negative review, we may contact you to remedy the situation.
If our company offers any help to reach a common satisfaction, for example; refunds the purchase, takes item back – in such cases the product becomes our property –  provides technical help, abides by the store policy,  you agree to remove such review.  If you fail to do so, we will have the right to sue you because You by doing so will incite actions (portray a derogatory picture of us) that will harm us (our business). "You incite actions that would cause harm."







Case 2:24-cv-00653-RCS Document 61 Filed 05/01/24 Page 54 of 89



# MobilityX

We're committed to making mobility safer, smarter, and more enjoyable for everyone.

| Quick links | Products |
|---|---|
| Why Us | Electric Scooters |
| Financing | Electric Tricycles |
| Layaway | Electrical Bicycles |
| Policy | Electric Wheelchairs |
| Shipping Delivery | Low-Temp Freezers |
| Waiver | |

☰ MENU

**MobilityX**

 0

Products

Parts

Cart

Checkout

1-800-936-1790

support@mobility4less.com

MIAMI - FL LOS ANGELES - CA PHOENIX - AZ HOUSTON - TX CHICAGO - IL NEW YORK - NY

© 2024 All Rights Reserved. MobilityX

Developed by **CV Infotech**



# EXHIBIT 4

Case 2:24-cv-00653-RJS Document 161 Filed 05/30/24 Page 57 of 89

 FINANCING AVAILABLE

• Miami - FL  • Los Angeles - CA  • Phoenix - AZ  • Houston - TX  • Chicago - IL  • New York - NY

☰ MENU

**MobilityX**

 0

MUST READ

# Our Waiver

## Buy Today, Pay Tomorrow

Welcome to our Waiver Page of **Mobility X**, where we prioritize safety and responsibility in all our activities and engagements.

## Explore our innovative solutions

We appreciate your commitment to safety and responsibility as we strive to provide you with enjoyable and memorable experiences through our mobility solutions and services.

PURCHASER MUST READ

# Dispute Resolution Agreement & Class Action Waiver

**A.** WITH YOUR PURCHASE, YOU AUTOMATICALLY AND EXPRESSLY WAIVE ANY RIGHT YOU MAY HAVE TO ARBITARTE A CLASS ACTION AND AUTOMATICALLY AGREE TO THESE TERMS. IF YOU THINK THAT THERE IS ANY SIGN OF FRAUD OR NON-COMPLIANCE WITH ANY FEDERAL OR STATE LAW, YOU AGREE NOT TO DO BUSINESS WITH US.

**B.** ALL TERMS ARE COMMUNICATED CLEARLY. IF YOU FIND IT OTHERWISE, YOU MUST NOTIFY US IN WRITING, VIA EMAIL, PRIOR TO MAKING ANY PURCHASE.

**C.** WE PROHIBIT THE USE OF OUR PRODUCTS IF YOU DO NOT AGREE TO THESE TERMS.

**D.** EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATRION AND NOT IN COURT OR JURY TRIAL.

**E.** IF A DISPUTE IS ARBITARTED, YOU WILL GIVE UP YOUR LEGAL RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER OF ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.

**F.** DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU WOUL DHAVE IN COURT MAY NOT BE AVAILABLE IN ARBITARTION.

**1.** How This Agreement Applies

This Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. and evidences a transaction involving commerce. Except as it otherwise provides, our Waiver Agreement applies to any legal dispute, past, present or future, arising out of or related to Customer  (sometimes "you" or "your") purchasing any of our products from us ("Company") or relationship with any of its agents, employees, affiliates, successors, assigns, subsidiaries or parent companies (each of which are third party beneficiaries of this Agreement). Except as it otherwise provides, this Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law, and therefore this Agreement requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial. Except as this Agreement otherwise provides, such disputes include without limitation disputes arising out of or relating to interpretation or

application of this Agreement, including the scope, formation, enforceability, revocability or validity of the Agreement or any portion of the Agreement.

**2.** Limitations on How This Agreement Applies
This Agreement does not apply to claims for workers compensation, state disability insurance and unemployment insurance benefits.

**3.** Mediation Either party may request to engage in mediation for any dispute before proceeding to arbitration. In the event that the parties mutually agree to mediate the dispute, the Company will pay the entirety of the mediator's costs and fees. A neutral mediator will be selected by mutual agreement of the parties.

**4.** Selecting the Arbitrator The Arbitrator shall be selected by mutual agreement of the Company and the Associate. Unless the you and Company mutually agree otherwise, the Arbitrator shall be an attorney experienced in arbitrating employment law disputes or a retired federal or state judicial officer who presided in the jurisdiction where the arbitration will be conducted. If for any reason the parties cannot agree to an Arbitrator, either party may apply to a court of competent jurisdiction with authority over the location where the arbitration will be conducted for appointment of a neutral Arbitrator. The court shall then appoint an arbitrator, who shall act under this Agreement with the same force and effect as if the parties had selected the arbitrator by mutual agreement. The location of the arbitration proceeding shall be no more than 45 miles from the place where the Company is located, unless each party to the arbitration agrees in writing otherwise.

**5.** Starting the Arbitration All claims in arbitration are subject to the same statutes of limitation that would apply in court. The demand for arbitration shall include identification of the parties, a statement of the legal and factual basis of the claim(s), and a specification of the remedy sought. The party bringing the claim must demand arbitration in writing and deliver the written demand by hand or first class mail to the other party within the applicable statute of limitations period.. The arbitrator shall resolve all disputes regarding the timeliness or propriety of the demand for arbitration. A party may apply to a court of competent jurisdiction for temporary or preliminary injunctive relief in connection with an arbitrable controversy in accordance with applicable law, and any such application shall not be deemed incompatible with or waiver of this agreement to arbitrate. The court to which the application is made is authorized to consider the merits of the arbitrable controversy to the

extent it deems necessary in making its ruling, but only to the extent permitted by applicable law. All determinations of final relief, however, will be decided in arbitration.

**6.** How Arbitration Proceedings Are Conducted In arbitration, the parties will have the right to conduct adequate civil discovery, bring dispositive motions, and present witnesses and evidence as needed to present their cases and defenses, and any disputes in this regard shall be resolved by the Arbitrator. A party, or at a party's request the Arbitrator, may subpoena witnesses or documents for discovery purposes or for the arbitration hearing.

**7.** Paying for the Arbitration Each party will pay the fees for his, her or its own attorneys, subject to any remedies to which that party may later be entitled under applicable law. However, in all cases where required by law, the Company will pay the Arbitrator's and arbitration fees. If under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties in accordance with said applicable law, and any disputes in that regard will be resolved by the Arbitrator.

**8.** The Arbitration Hearing and Award Within 30 days of the close of the arbitration hearing, any party will have the right to prepare, serve on the other party and file with the Arbitrator a brief. The Arbitrator may award any party any remedy to which that party is entitled under applicable law, but such remedies shall be limited to those that would be available to a party in his or her individual capacity in a court of law for the claims presented to and decided by the Arbitrator, and no remedies that otherwise would be available to an individual in a court of law will be forfeited by virtue of this Agreement. The Arbitrator will issue a decision or award in writing, stating the essential findings of fact and conclusions of law. Except as may be permitted or required by law, as determined by the Arbitrator, neither a party nor an Arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of all parties. A court of competent jurisdiction shall have the authority to enter a judgment upon the award made pursuant to the arbitration.

**9.** Enforcement of this Agreement In the event any portion of this Agreement is deemed unenforceable, the remainder of this agreement will be enforceable.



Case 2:24-cv-00653-RDS   Document 16-1   Filed 05/01/24   Page 62 of 89



# MobilityX

 We're committed to making mobility safer, smarter, and more enjoyable for everyone.

## Quick links

Why Us

Financing

Layaway

Policy

Shipping Delivery

Waiver

## Shop

## Products

Electric Scooters

Electric Tricycles

Electrical Bicycles

Electric Wheelchairs

Low-Temp Freezers

## Get in touch

Products

Parts

Cart

Checkout

1-800-936-1790

support@mobility4less.com

MIAMI - FL LOS ANGELES - CA PHOENIX - AZ HOUSTON - TX CHICAGO - IL NEW YORK - NY

© 2024 All Rights Reserved. MobilityX

Developed by **CV Infotech**

# EXHIBIT 5

Case 2:24-cv-00653-RDS Document 161 Filed 05/20/24 Page 65 of 89

 FINANCING AVAILABLE

• Miami - FL    • Los Angeles - CA    • Phoenix - AZ    • Houston - TX    • Chicago - IL    • New York - NY

SHOPPING CART  →  CHECKOUT  →  ORDER COMPLETE

Have a coupon? **Click here to enter your code**

## BILLING DETAILS

First name *

Last name *

Company name (optional)

Country / Region *

## YOUR ORDER

| PRODUCT | SUBTOTAL |
| --- | --- |
| Adult Motorized Electric Tricycle  × 1 | $1,599.00 |

☰ MENU

**MobilityX**

🛒 1

Case 2:24-cv-00653-RCS Document 1-61 Filed 05/01/24 Page 66 of 89

Street address *

| House number and street name |

| Apartment, suite, unit, etc. (optional) |

Town / City *

| |

State *

| Connecticut |

ZIP Code *

| |

Phone *

| 602-382-6513 |

Email address *

| |

☐ Create an account?

☐ Ship to a different address?

| Subtotal | | $1,599.00 |
| Coupon: lucky | | -$200.00  ✕ |
| Shipping | | Free shipping |
| Access.Tax | | $102.83 |
| **Total** | | **$1,501.83** |

Credit or Debit Card

Payment information

Card number

| |

Confirm card number

| |

Exp. date - enter 11 for dd, if day is not on your card

| mm/dd/yyyy |

Security code

| |

☰ MENU

**MobilityX**

🛒 1

Case 2:24-cv-00653-RDS Document 161 Filed 05/01/24 Page 67 of 89

Notes about your order, e.g. special notes for delivery.

Pay with check or checking account

PayTomorrow  **Financing For All Credit Types**

Layaway

Other Types of Financing

Your personal data will be used to process your order, support your experience throughout this website, and for other purposes described in our **privacy policy**.

☐ I have read and agree to the website **terms and conditions** *

PLACE ORDER

# MobilityX

We're committed to making mobility safer, smarter, and more enjoyable for everyone.

## Quick links

Why Us

Financing

## Products

Electric Scooters

Electric Tricycles

MENU

**MobilityX**

Case 22-24-cv-00653-RCS Document 161 Filed 04/01/24 Page 68 of 89

Policy

Electric Wheelchairs

Shipping Delivery

Low-Temp Freezers

Waiver

## Shop

## Get in touch

Products



1-800-936-1790

Parts

support@mobility4less.com

Cart

Checkout

MIAMI - FL LOS ANGELES - CA PHOENIX - AZ HOUSTON - TX CHICAGO - IL NEW YORK - NY

© 2024 All Rights Reserved. MobilityX

Developed by **CV Infotech**

**EXHIBIT 6**

Case 2:24-cv-00653-RJS-DBP Document 1-61 Filed 09/01/24 Page 71 of 89

 FINANCING AVAILABLE

- Miami - FL
- Los Angeles - CA
- Phoenix - AZ
- Houston - TX
- Chicago - IL
- New York - NY

SHOPPING CART → CHECKOUT → ORDER COMPLETE

Have a coupon? **Click here to enter your code**

## BILLING DETAILS

First name *

Last name *

Company name (optional)

Country / Region *

## YOUR ORDER

| PRODUCT | SUBTOTAL |
|---|---|
| Adult Motorized Electric Tricycle  × 1 | $1,599.00 |

☰ MENU

**MobilityX**

Case 2:24-cv-00653-RCS   Document 1-1   Filed 06/01/24   Page 71 of 89

Street address *

House number and street name

Apartment, suite, unit, etc. (optional)

Town / City *

State *

Connecticut

ZIP Code *

Phone *

602-382-6513

Email address *

☐ Create an account?

☐ Ship to a different address?

| | |
|---|---|
| Subtotal | $1,599.00 |
| Coupon: lucky | -$200.00  ✕ |
| Shipping | Free shipping |
| Access.Tax | $102.83 |
| **Total** | **$1,501.83** |

Credit or Debit Card

Payment information

Card number

Confirm card number

Exp. date - enter 11 for dd, if day is not on your card

mm/dd/yyyy

Security code

**MENU**

**MobilityX**

🛒 1

Notes about your order, e.g. special notes for delivery.

Pay with check or checking account

PayTomorrow  **Paytomorrow** **Financing For All Credit Types**

Layaway

Other Types of Financing

Your personal data will be used to process your order, support your experience throughout this website, and for other purposes described in our **privacy policy**.

## Privacy Policy

This Privacy Policy is developed to ensure maximum security to customers during their association with us and later. The privacy policy highlights the usage of information provided by customers and its interpretation at our end and the measures adopted by us to secure it.

☐ I have read and agree to the website **terms and conditions** *

PLACE ORDER

MENU

**MobilityX**

# MobilityX

 We're committed to making mobility safer, smarter, and more enjoyable for everyone.

## Quick links

Why Us

Financing

Layaway

Policy

Shipping Delivery

Waiver

## Shop

Products

Parts

Cart

Checkout

## Products

Electric Scooters

Electric Tricycles

Electrical Bicycles

Electric Wheelchairs

Low-Temp Freezers

## Get in touch

1-800-936-1790

support@mobility4less.com

MIAMI - FL LOS ANGELES - CA PHOENIX - AZ HOUSTON - TX CHICAGO - IL NEW YORK - NY

© 2024 All Rights Reserved. MobilityX

Developed by **CV Infotech**

# EXHIBIT 7

Case 2:24-cv-00653-RGS Document 1-61 Filed 05/01/24 Page 75 of 89


● Miami - FL ● Los Angeles - CA ● Phoenix - AZ ● Houston - TX ● Chicago - IL ● New York - NY

SHOPPING CART → CHECKOUT → ORDER COMPLETE

Have a coupon? **Click here to enter your code**

## BILLING DETAILS

First name *

Last name *

Company name (optional)

Country / Region *

## YOUR ORDER

| PRODUCT | SUBTOTAL |
|---|---|
| Adult Motorized Electric Tricycle  × 1 | $1,599.00 |

MENU

**MobilityX**

Street address *

House number and street name

Apartment, suite, unit, etc. (optional)

Town / City *

State *

Connecticut

ZIP Code *

Phone *

602-382-6513

Email address *

☐ Create an account?

☐ Ship to a different address?

| Subtotal | $1,599.00 |
|---|---|
| Coupon: lucky | -$200.00 ✕ |
| Shipping | Free shipping |
| Access.Tax | $102.83 |
| **Total** | **$1,501.83** |

Credit or Debit Card

Payment information

Card number

Confirm card number

Exp. date - enter 11 for dd, if day is not on your card

mm/dd/yyyy

Security code

**MobilityX**

≡ MENU

🛒 1

Notes about your order, e.g. special notes for delivery.

Pay with check or checking account

PayTomorrow **Paytomorrow** **Financing For All Credit Types**

Layaway

Other Types of Financing

Your personal data will be used to process your order, support your experience throughout this website, and for other purposes described in our **privacy policy**.

## Return Privacy Policy

We accept returns on defective products, parts, or accessories for seven days after purchase. The Actual **Shipping and handling fees are not refundable**. If the product was advertised with free shipping than the actual shipping cost, which is not free, will be calculated.

☐ I have read and agree to the website **terms and conditions** *

PLACE ORDER

≡ MENU

**MobilityX**



# MobilityX

We're committed to making mobility safer, smarter, and more enjoyable for everyone.

## Quick links

Why Us

Financing

Layaway

Policy

Shipping Delivery

Waiver

## Shop

Products

Parts

Cart

Checkout

## Products

Electric Scooters

Electric Tricycles

Electrical Bicycles

Electric Wheelchairs

Low-Temp Freezers

## Get in touch

1-800-936-1790

support@mobility4less.com

MIAMI - FL LOS ANGELES - CA PHOENIX - AZ HOUSTON - TX CHICAGO - IL NEW YORK - NY

© 2024 All Rights Reserved. MobilityX

Developed by **CV Infotech**

# EXHIBIT 8

Case 2:24-cv-00653-CDS   Document 161   Filed 05/01/24   Page 80 of 89

 FINANCING AVAILABLE

• Miami - FL   • Los Angeles - CA   • Phoenix - AZ   • Houston - TX   • Chicago - IL   • New York - NY

SHOPPING CART  →  CHECKOUT  →  ORDER COMPLETE

Have a coupon? **Click here to enter your code**

## BILLING DETAILS

First name *

Last name *

Company name (optional)

Country / Region *

## YOUR ORDER

| PRODUCT | SUBTOTAL |
|---|---|
| Adult Motorized Electric Tricycle  × 1 | $1,599.00 |

≡ MENU

**MobilityX**

🛒 1

Case 2:24-cv-00653-RJS   Document 16-1   Filed 09/01/24   Page 82 of 89

Street address *

House number and street name

Apartment, suite, unit, etc. (optional)

Town / City *

State *

Connecticut

ZIP Code *

Phone *

602-382-6513

Email address *

☐ Create an account?

☐ Ship to a different address?

| | |
|---|---|
| **Subtotal** | **$1,599.00** |
| **Coupon: lucky** | **-$200.00** ✕ |
| **Shipping** | Free shipping |
| **Access.Tax** | **$102.83** |
| **Total** | **$1,501.83** |

Credit or Debit Card

Payment information

Card number

Confirm card number

Exp. date - enter 11 for dd, if day is not on your card

mm/dd/yyyy

Security code

☰ MENU

**MobilityX**

🛒 1

Notes about your order, e.g. special notes for delivery.

Pay with check or checking account

PayTomorrow **Paytomorrow** **Financing For All Credit Types**

Layaway

Other Types of Financing

Your personal data will be used to process your order, support your experience throughout this website, and for other purposes described in our **privacy policy**.

## Large Merchandize Additional Policy

**B/1**

Address Correction Fees

Orders which have been submitted to us with incorrect address

☐ I have read and agree to the website **terms and conditions** *

PLACE ORDER



# MobilityX

 We're committed to making mobility safer, smarter, and more enjoyable for everyone.

## Quick links

Why Us

Financing

Layaway

Policy

Shipping Delivery

Waiver

## Shop

Products

Parts

Cart

Checkout

## Products

Electric Scooters

Electric Tricycles

Electrical Bicycles

Electric Wheelchairs

Low-Temp Freezers

## Get in touch

📞 1-800-936-1790

✉️ support@mobility4less.com

📍 MIAMI - FL LOS ANGELES - CA PHOENIX - AZ HOUSTON - TX CHICAGO - IL NEW YORK - NY

© 2024 All Rights Reserved. MobilityX

Developed by **CV Infotech**



**EXHIBIT 9**

Case 2:24-cv-00653-RDS Document 16-1 Filed 06/20/24 Page 85 of 89

 FINANCING AVAILABLE

• Miami - FL • Los Angeles - CA • Phoenix - AZ • Houston - TX • Chicago - IL • New York - NY

SHOPPING CART → CHECKOUT → ORDER COMPLETE

Have a coupon? **Click here to enter your code**

## BILLING DETAILS

First name *

Last name *

Company name (optional)

Country / Region *

## YOUR ORDER

| PRODUCT | SUBTOTAL |
|---|---|
| Adult Motorized Electric Tricycle × 1 | $1,599.00 |

**MobilityX**

MENU

Street address *

House number and street name

Apartment, suite, unit, etc. (optional)

Town / City *

State *

Connecticut

ZIP Code *

Phone *

602-382-6513

Email address *

☐ Create an account?

☐ Ship to a different address?

| Subtotal | $1,599.00 |
| Coupon: lucky | -$200.00  ✕ |
| Shipping | Free shipping |
| Access.Tax | $102.83 |
| **Total** | **$1,501.83** |

Credit or Debit Card

Payment information

Card number

Confirm card number

Exp. date - enter 11 for dd, if day is not on your card

mm / dd / yyyy

Security code

☰ MENU

**MobilityX**

🛒 1

Notes about your order, e.g. special notes for delivery.

Pay with check or checking account

PayTomorrow  **Financing For All Credit Types**

Layaway

Other Types of Financing

Your personal data will be used to process your order, support your experience throughout this website, and for other purposes described in our **privacy policy**.

## Privacy Policy for Dispute Resolution

DISPUTE RESOLUTION AGREEMENT AND CLASS ACTION WAIVER

☐ I have read and agree to the website **terms and conditions** *

PLACE ORDER

**MobilityX**

# MobilityX

We're committed to making mobility safer, smarter, and more enjoyable for everyone.

## Quick links

Why Us

Financing

Layaway

Policy

Shipping Delivery

Waiver

## Shop

Products

Parts

Cart

Checkout

## Products

Electric Scooters

Electric Tricycles

Electrical Bicycles

Electric Wheelchairs

Low-Temp Freezers

## Get in touch

1-800-936-1790

support@mobility4less.com

MIAMI - FL LOS ANGELES - CA PHOENIX - AZ HOUSTON - TX CHICAGO - IL NEW YORK - NY

© 2024 All Rights Reserved. MobilityX

Developed by **CV Infotech**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mary Makuc, and all similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>Gabor Smatko, Monica Smatko, Mobilityless, LLC, Epizontech, LLC, Fountainmoons, LLC, Hillsunion, LLC, Mobilitytrend, LLC, Mogavike2020, LLC, and John Does I-X,<br><br>Defendant. | No. 2:24-cv-00633-ROS<br><br>**ORDER** |

Pursuant to the Motion to Compel Arbitration and Stay This Action Pending Arbitration (the "Motion"), and good cause appearing therefore,

**IT IS HEREBY ORDERED** that the Motion is **GRANTED**. Plaintiff shall arbitrate each of her individual claims against all of the Defendants. Plaintiff is barred from pursuing any claims on behalf of a class action, whether as a class representative or as a member of a class. All proceedings in this action are stayed pending arbitration.