Anthony T. King (#027459)
Megan Carrasco (#037109)
SNELL & WILMER L.L.P.
One East Washington Street
Suite 2700
Phoenix, Arizona 85004-2556
Telephone: 602.382.6000
Facsimile: 602.382.6070

E-Mail: aking@swlaw.com

*Attorneys for Defendants Gabor Smatko, Monica Smatko, Mobilityless, LLC, Epizontech, LLC, Fountainmoons, LLC, Hillsunion, LLC, Mobilitytrend, LLC, & Mogavike2020, LLC*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mary Makuc, and all similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>Gabor Smatko, Monica Smatko, Mobilityless, LLC, Epizontech, LLC, Fountainmoons, LLC, Hillsunion, LLC, Mobilitytrend, LLC, Mogavike2020, LLC, and John Does I-X,<br><br>Defendants. | No. 2:24-cv-00633-ROS<br><br>**Reply in Support of Motion to Compel Arbitration and to Stay This Action Pending Arbitration**<br><br>**(Oral Argument Requested)** |

Defendants met their burden of proving an arbitration agreement exists with Plaintiff. Plaintiff cannot evade arbitration by feigning ignorance of terms and conditions that she had to affirmatively click her agreement to. Nor does Mobilityless, LLC's recent dissolution have any effect whatsoever on whether Defendants can compel arbitration. Simply put, none of Plaintiff's arguments preclude enforcement of the Arbitration Agreement. Thus, the Court should grant Defendants' Motion, compel arbitration of each of Plaintiff's individual claims, and stay this action pending arbitration.

## I. Defendants Have Met Their Burden of Proving the Existence of a Valid and Enforceable Arbitration Agreement.

As explained in the Motion, before being able to place an order through the Website, every customer—including Plaintiff—must click a box confirming "I have read and agree to the website **terms and conditions\***". (bold emphasis in original). Dkt. 16 at 4; Dkt. 16-1 ¶¶ 19, 31-32. The box is not automatically checked, and each customer must affirmatively click it to place an order through the Website. Dkt. 16-1 ¶ 21; Ex. 5 to Dkt. 16-1. The phrase "term and conditions" is bolded and hyperlinks to the Website's policies, including the Arbitration Agreement. Dkt. 16-1 ¶ 22. Both the hyperlinked terms and conditions and the check box are located directly above the "place order" button:

> Your personal data will be used to process your order, support your experience throughout this website, and for other purposes described in our **privacy policy**.
>
> ☐ I have read and agree to the website **terms and conditions** \*
>
> PLACE ORDER

Dkt. 16-1 ¶ 21; Ex. 5 to Dkt. 16-1. This specific placement of the checkbox and hyperlinked terms and conditions directly above the "place order" button has consistently remained this way since the Website's inception in 2018. Dkt. 16-1 ¶¶ 3, 27. The Arbitration Agreement has been part of the Website terms and conditions since at least June 2020. Dkt. 16-1 ¶ 10. Plaintiff purchased her electric tricycle through the Website in April 2021, Dkt. 1 ¶ 32, and Plaintiff could not have purchased it through the Website without affirmatively checking the box confirming that "I have read and agree to the website **terms and conditions\***". Dkt. 16-1 ¶¶ 31-32.

Courts throughout the country have repeatedly enforced arbitration agreements via similar clickwrap agreements. *See* Dkt. 16 at 9-12 (citing cases); Section II, *infra*.

## II. Plaintiff's Alleged (and Self-Serving) Lack of Actual Notice Does Not Preclude the Existence of a Valid Arbitration Agreement Under Massachusetts Law.

Plaintiff argues that "Defendants have not provided the Court with computer records establishing that Ms. Makuc had actual knowledge of the arbitration policy" and Defendants "ha[ve] no contemporaneous records establishing that Ms. Makuc viewed and/or accepted the alleged terms of service" of the Website, *see* Dkt. 17 at 5-9, but Plaintiff misconstrues the applicable standard. "Whether or not plaintiffs had actual notice of the terms of the [arbitration] Agreement, all that matters is that plaintiffs had reasonable notice of the terms." *Bekele v. Lyft, Inc.*, 199 F. Supp. 3d 284, 296 (D. Mass. 2016) (citation omitted). This is the case even if the Arbitration Agreement appears toward the end of the terms of service. *Id.*

Indeed, courts applying Massachusetts law[1] have enforced arbitration agreements and repeatedly rejected arguments by plaintiffs who claim they did not receive actual notice or that the defendant failed to produce contemporaneous records at the time. *See*, *e.g.*, *Roberts v. Obelisk, Inc.*,[2] Case No. 18cv2898-LAB (BGS) 2019 WL 1902605, at *6 (S.D. Cal. Apr. 29, 2019) ("That Plaintiffs 'do not recall' agreeing to the terms is immaterial."); *Wickberg v. Lyft*, 356 F. Supp. 3d 179, 184 n. 5 (D. Mass. 2018) ("Wickberg also challenges the arbitration agreement on grounds that he does not remember, nor is there any evidence of him, clicking the hyperlink to view the terms of service. However, the relevant inquiry is not whether he actually viewed the terms but whether they were reasonably communicated to him."). Indeed, "Massachusetts courts have routinely concluded that clickwrap agreements—whether they contain arbitration provisions or other contractual terms—provide users with reasonable communication of an agreement's terms." *Bekele*, 199 F. Supp. 3d at 295-297 ("Under the circumstances—and particularly in light of the weight of Massachusetts authority holding that clickwrap agreements such as Lyft's provide

---

[1] While Plaintiff contends that Massachusetts law applies and Defendants contend that Arizona law applies, because the result will likely be the same under either state's law, the Court need not perform a conflict of laws analysis.

[2] Plaintiff cites *Roberts v. Obelisk, Inc.* on page 10 of the Response. *See* Dkt. 17 at 10.

- 3 -

1 reasonable notice to users—Lyft has satisfied its burden of demonstrating that the TOS
2 provided [plaintiff] with reasonable notice of its arbitration provision.").

3       This is because under Massachusetts law, "[a]bsent actual notice, the totality of the
4 circumstances must be evaluated in determining whether reasonable notice has been given
5 of the terms and conditions." *Kauders v. Uber Techs., Inc.*, 486 Mass. 557, 572 (2021).
6 Indeed, "[a]ctual notice … will also generally be found where the user must somehow
7 interact with the terms before agreeing to them." *Id.* As the Supreme Judicial Court of
8 Massachusetts—Massachusetts' highest appellate court—recently explained:

> A user may be required to expressly and affirmatively manifest assent to an online agreement by clicking or checking a box that states the user agrees to the terms and conditions. **These are often referred to as "clickwrap" agreements, and they are regularly enforced.** As one court has observed, "[w]hile clickwrap agreements … are not necessarily required …, they are certainly the easiest method of ensuring that terms are agreed to. These are the clearest manifestations of assent.
>
> …
>
> Requiring an expressly affirmative act, therefore, such as clicking a button that states "I Agree," can help alert users to the significant of their actions. **Where they so act, they have reasonably manifested their assent.**

17 *Id.* at 574-575 (internal citations omitted) (emphasis added). The *Kauders* Court concluded
18 that the arbitration provision at issue in Uber's mobile application for users signing up for
19 its services, did not give reasonable notice because "the design of the interface for the app
20 here enables, if not encourages, users to ignore the terms and conditions." *Id.* at 577. Rather,
21 "Uber ha[d] designed an interface that allows the registration to be completed without
22 reviewing **or even acknowledging the terms and conditions**." *Id.* at 579 (emphasis
23 added). The user "could create an account without ever affirmatively stating that he or she
24 agreed to the terms and conditions", and the "final step in the process was to input payment
25 information and click "DONE", which is "different from, and less clear than, other
26 affirmative language such as 'I agree.'" *Id.* at 580.

27       By contrast, Uber's interface of the mobile application for Uber's drivers, which
28 contained an enforceable arbitration provision, required the driver to affirmatively confirm

1  that the driver had reviewed and accepted the terms and conditions. *Kauders*, 486 Mass. at
2  576-577 ("To advance past the screen with the hyperlink and actively use the Uber App,
3  [the driver] had to confirm that he had first reviewed and accepted the [agreement] by
4  clicking 'YES, I AGREE.'"). Similarly, here, Plaintiff was required to affirmatively click
5  on the box stating that "I have read and agree to the website **terms and conditions\***", which
6  is located directly above the "Place Order" button, and could not have completed her
7  purchase without doing so. Dkt. 16-1 ¶¶ 19, 26, 31-32.

8  Indeed, as explained in the Motion, courts have even enforced arbitration provisions
9  contained in even hybrid clickwrap agreements (*i.e.*, where the user does not have to
10 affirmatively click on a box, and the terms are not hidden obscurely elsewhere on the
11 website). *See* Dkt. 16 at 11 (discussing *Oberstein v. Live Nation Entertainment, Inc.*, 60
12 F.4th 505 (9th Cir. 2023)). Plaintiff attempts to distinguish *Oberstein* by arguing that the
13 plaintiff in *Oberstein* had been presented with the "terms of service *three separate* times"
14 and "there is no affirmative evidence establishing that Ms. Makuc reviewed the terms or
15 click a box acknowledging them." *See* Dkt. 17 at 11-12 (italics in original). But the users
16 in *Oberstein* were presented with the terms of service three separate times because they had
17 to create and sign in to an account before purchasing tickets through Live Nation; here, the
18 Website does not require any users to create an account or sign in. And most importantly,
19 what Plaintiff repeatedly ignores in her Response is the undisputed fact that Plaintiff was
20 required to affirmatively click on the box stating that "I have read and agree to the website
21 **terms and conditions\***" and could not have completed her purchase through the Website
22 without doing so. Dkt. 16-1 ¶¶ 19, 31-32. That line—like the disclosure in *Oberstein*—was
23 located directly above the "Place Order" button.[3] 60 F. 4th at 515-516; Dkt. 16-1 ¶ 21; Ex.
24 5 to Dkt. 16-1. Under such circumstances, even without having to affirmatively click a
25 separate box agreeing to the terms, such terms were reasonably communicated to the
26 plaintiff. Similarly, here, the Website's terms and conditions were conspicuously disclosed

---

[3] For these same reasons, the Website's Arbitration Agreement cannot be a browsewrap agreement, and Plaintiff's efforts to characterize it as such lack merit. *See* Dkt. 17 at 8-10.

to Plaintiff, and the line disclosing such terms and conditions and providing notice to Plaintiff of her acceptance of those terms, was located directly above the button for her to complete the purchase transaction.

Courts have similarly rejected Plaintiff's argument that Defendants failed to meet their burden because they did not produce the "contemporaneous records" that Plaintiff actually viewed and assented to the Website's terms and conditions. *See Roberts*, 2019 WL 1902605, at *6 ("Plaintiff's secondary primary argument is that Obelisk has not provided an 'executed' version of the Terms and therefore cannot demonstrate that Plaintiffs assented to the agreement. **Were the Court to accept this argument, it would unravel nearly every clickwrap agreement on the Internet**.") (emphasis added).

Here, like in *Roberts*, Defendants have "submitted evidence—a declaration by its [principal Gabor Smatko]—showing that Plaintiff[] … was required to accept the [terms and conditions] prior to completing that transaction" as well as a copy of the Arbitration Agreement in effect on the date Plaintiff made her purchase. *See Roberts*, 2019 WL 1902605, at *6. Accordingly, that "Plaintiffs 'do not recall' agreeing to the terms is immaterial." *See id*. What is dispositive here is that all customers purchasing products through the Website, including Plaintiff, had to affirmatively click the box confirming that "I have read and agree to the website **terms and conditions***" before completing the transaction. Dkt. 16-1 ¶¶ 31-32. And contrary to Plaintiff's contention that Defendants only presented the Website as of April 2024, *see* Dkt. 17 at 3, the placement of the checkbox and hyperlinked terms and conditions directly above the "place order" button has consistently remained this way since the Website's inception in 2018. *See* Dkt. 16 at 5 (citing Dkt. 16-1 ¶ 27). Thus, the checkbox's placement directly above the place order button, when combined with Plaintiff's requisite affirmative action in order to purchase the product, constitutes an enforceable clickwrap agreement (and can be deemed actual notice, per *Kauders*) that Plaintiff manifested her assent to.

Notably, Plaintiff failed to cite a single case denying a motion to compel arbitration under factual circumstances similar here (*i.e.*, denying arbitration after a website user

affirmatively clicked agreement to terms that included an arbitration provision). *See generally* Dkt. 17. Instead, Plaintiff relied only on cases against Uber, which as explained above, have very different facts and interface layouts and design.

Finally, Plaintiff's reliance on a website purporting to archive the content of various websites over time is questionable at best. *See* Dkt. 17 at 7-8 (citing exhibits attached to Dkt. 17-2); Dkt. 17-2 ¶¶ 13-18. While Plaintiff's counsel attests to the content of the archive website www.web.archive.org, Plaintiff's counsel lacks personal knowledge of that website, how it allegedly takes snapshots of websites over time, or the website's accuracy (and inaccuracy). But more importantly, this archive website failed to capture the most relevant webpage here: the purchase order page showing placement of the check box, terms and conditions language, and place order button. Obviously the page existed at the time because purchases were clearly made, and the fact that the archive website failed to capture that page of the Website renders the information provided from the archive website both unreliable and unhelpful. In any event, even the archive website establishes that the Arbitration Agreement existed on the Website since at least 2020,[4] including as of the date that Plaintiff made her purchase. *See* Dkt. 17-2 ¶ 18; Exhibit D to Dkt. 17-2. Simply put, Plaintiff's efforts to discredit Mr. Smatko's declaration[5]—the only individual who has personal knowledge of the contents of the Website over time since its inception—are themselves unreliable and unconvincing. Thus, the Court should grant Defendants' Motion and compel arbitration of each of Ms. Makuc's individual claims against Defendants.

### III. **Plaintiff's Consideration Argument Lacks Merit.**

Plaintiff contends that no consideration was exchanged between Plaintiff and

---

[4] Plaintiff's counsel also criticizes Defendants for not mentioning or seeking to compel arbitration in a prior lawsuit filed in Massachusetts in 2019. Dkt. 17-2 ¶¶ 3-4. Because the Arbitration Agreement was not included on the Website until June 2020, Dkt. 17-1 ¶ 10, at the time, Defendants could not compel arbitration against the plaintiffs who allegedly purchased products from the Website in 2019 and who had brought suit in 2019.

[5] Plaintiff also cites a stipulated judgment Defendants entered into with the State of Connecticut from 2010 and an offer of judgment that was accepted in a Massachusetts lawsuit in 2022 (the same one that was filed in 2019), *see* Dkt. 17 at 4, but such evidence is improper for the Court to consider and inadmissible under Fed. R. Evid. 404(b).

Mobilityless, LLC (because she alleges her initial payment was received by Mobilitytrend, LLC, *see* Dkt. 17 at 13-14), so no Arbitration Agreement was formed. Not so. Plaintiff also alleges that Mobilityless, LLC received other monies from her. *See* Dkt. 1 ¶ 48. But even if Mobilityless, LLC received no money from Plaintiff, that does not mean it did not receive consideration; both parties received consideration via their mutual promise to arbitrate, as well as the various other rights disclosed and agreed to via the terms and conditions. Dkt. 16-1, Ex. 4 ("Either you or we may choose to have any dispute between us decided by arbitration and not in court or jury trial."). *See Perez-Tejada v. Mattress Firm, Inc.*, No. 17-12448-DJC, 2019 WL 830450, at *6 (D. Mass. Feb. 21, 2019) ("[I]t is well settled that the mutual promises of the parties in an agreement for arbitration are sufficient consideration each for the other. That is, the mutual promise to arbitrate is a bargained-for exchange affording both a legal detriment and a corresponding benefit to the parties.") (internal quotations and citations omitted).

But even if Plaintiff's allegation were true—that only Mobilitytrend, LLC received payment from Plaintiff—then an enforceable Arbitration Agreement would exist between Plaintiff and Mobilitytrend, LLC. Furthermore, as either a third-party beneficiary or non-signatory to the Arbitration Agreement, Mobilitytrend, LLC is entitled to enforce the Arbitration Agreement and compel arbitration. Dkt. 16 at 13-16. Notably, Plaintiff failed to cite any authorities denying arbitration based on her consideration argument. *See* Dkt. 17 at 13-14. Accordingly, this argument lacks merit and does not preclude arbitration.

**IV.   Dissolved Companies Are Entitled to Compel Arbitration.**

Dissolved companies can compel arbitration. As Plaintiff concedes in the Response, dissolved companies may "prosecut[e] and defend[] suits". Dkt. 17 at 15 (quoting M.G.L. ch. 156C, § 45(b)). Indeed, the right to compel arbitration is a defense that, if not timely asserted, is waived. *See AmeriPride Servs., Inc. v. Valley Indus. Serv., Inc.*, No. CIV. S-00-113 LKK/JFM, 2008 WL 5068672, at *5 (E.D. Cal. Nov. 25, 2008) ("[C]ourts have recognized that defendants' litigation behavior can constitute waiver of at least two other defenses: … and a right to compel arbitration."). Even dissolved companies are entitled to

- 8 -

1 invoke and resolve disputes via arbitration. *See*, *e.g.*, *Milton L. Ehrlich, Inc. v. Unit Frame & Floor Corp.*, 5 N.Y.2d 275, 279 (1959) ("Since arbitration is but a substitute for the judicial process, with the parties creating their own forum and picking their own judges, a dissolved corporation which, by law, was enabled to sue in its corporate name would likewise be endowed with the capacity to participate in arbitration proceedings."); 21 WILLISTON ON CONTRACTS § 57:43 (4th ed.) ("A dissolved corporation may invoke the arbitration procedure."). Notably, Plaintiff failed to cite any cases where a court denied arbitration because one of the parties had dissolved,[6] and in researching this issue for this Reply, Defendants have not discovered any.

But even if Mobilityless, LLC could not compel arbitration simply because it has dissolved (it can), Defendants are still entitled to compel arbitration under alternative estoppel, for the reasons stated in the Motion. *See* Motion at 13-16. Plaintiff has failed to even argue or suggest otherwise. *See generally* Dkt. 17. Thus, the Court should grant this Motion and compel arbitration.

### V.     Conclusion.

A valid and enforceable Arbitration Agreement exists with Plaintiff. Plaintiff had to affirmatively click on the box indicating "I have read and agreed to the website **terms and conditions\***" and could not have placed her order through the Website without doing so. That Plaintiff does not remember doing so cannot defeat enforcement of the Arbitration Agreement.

Plaintiff has failed to oppose the Motion on any other grounds. Accordingly, Plaintiff has conceded that her claims are within the scope of the Arbitration Agreement and that the non-signatory Defendants are entitled to compel arbitration under an alternative estoppel and/or third-party beneficiary theory. Thus, for the reasons stated in the Motion and in this

---

[6] Plaintiff's reliance on *485 Lafayette St. Acquisition, LLC v. Glover Estates, LLC*, *see* Dkt. 17 at 15, is misplaced because an option to purchase real estate is not the same as an arbitration provision. The exercise of an option to purchase is clearly an effort to continue carrying on the company's original business (which a dissolved company expressly cannot do) whereas invoking arbitration is a defense to a lawsuit (which a dissolved company expressly can do).

Reply, Defendants respectfully request that the Court (1) compel arbitration of each of Ms. Makuc's individual claims against Defendants and (2) stay this action pending arbitration.

DATED this 22nd day of May, 2024.

SNELL & WILMER L.L.P.

By: *s/ Anthony T. King*
Anthony T. King
Megan Carrasco
One East Washington Street
Suite 2700
Phoenix, Arizona 85004-2556
*Attorneys for Defendants Gabor Smatko, Monica Smatko, Mobilityless, LLC, Epizontech, LLC, Fountainmoons, LLC, Hillsunion, LLC, Mobilitytrend, LLC & Mogavike2020, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and for transmittal of a Notice of Electronic Filing to all CM/ECF Registrants.

<em>s/ Martin Lucero</em>

4866-2227-3472