1
2
3
4
5
6

## IN THE UNITED STATES DISTRICT COURT

7

## FOR THE DISTRICT OF ARIZONA

8

| | |
|---|---|
| 9  Mary Makuc, | No. CV-24-00633-PHX-ROS |
| 10        Plaintiff, | **ORDER** |
| 11  v. | |
| 12  Gabor Smatko, et al., | |
| 13        Defendants. | |

14

15    Defendants filed a Motion a Compel Arbitration against Plaintiff.

16  (Doc. 16, "Mot."). The matter is fully briefed. (Docs. 16, 17, 18). For the reasons that

17  follow, the Court will grant Defendants' Motion.

18  **I.    Background**

19    The Complaint alleges, on April 20, 2021, Plaintiff purchased an electric tricycle

20  from www.mobility4less.com (the "Website")[1] for $2,950.27 via electronic check

21  deposited to a bank account registered to Mobilitytrend, LLC. (Doc. 1, "Compl." at

22  ¶¶ 32-33, 36). The tricycle was delivered to Plaintiff on July 7, 2021. (*Id.* at ¶ 39). Plaintiff

23

24  ---

[1] The Website serves as the store for Defendant Mobilityless, LLC, a dissolved
25  Massachusetts corporation. (Compl. at ¶¶ 6, 29). "Through the Website, Mobilityless,
LLC sold a variety of products, including [] affordable electric vehicles, such as electric
26  bicycles, tricycles, and wheelchairs." (Doc. 16-1 at ¶ 4). Defendant Gabor Smatko is the
owner and sole member of Mobilityless, LLC, as well as the operator of the Website.
27  (*Id.* at ¶¶ 4, 29). The Complaint also makes allegations against Defendant Monica
Smatko—Mr. Smatko's wife—and their five LLCs: Fountainmoons, LLC (an Arizona
28  corporation owned by Mrs. Smatko), Mobilitytrend, LLC (an Arizona corporation owned
by Mr. Smatko), Epizontech, LLC (a Massachusetts corporation owned by Mr. Smatko),
Mogavike2020, LLC (an Arizona corporation owned by Mrs. Smatko), and Hillsunion,
LLC (an Arizona corporation owned by Mrs. Smatko). (*Id.* at ¶¶ 5-11).

alleges the tricycle "did not operate as advertised" and "was unstable and dangerous" "due to defects." (*Id.* at ¶¶ 40-41). Further, Plaintiff contends "the electronic monitor on the tricycle showed error symbols," "there was no manual to explain what the errors were and/or how to fix them," and "the tricycle did not come with a Certificate of Quality as promised by Mobilityless, LLC." (*Id.* at ¶¶ 42-44). When Plaintiff contacted Defendant Mobilityless, LLC for assistance, it directed her to purchase a manual for the tricycle from Epizontech, LLC. (*Id.* at ¶ 45). She "paid $16.00 to Epizontech for a manual which she never received." (*Id.*). Plaintiff alleges Defendant Mobilityless, LLC "refused to exchange the tricycle, permit a return of the tricycle, or otherwise refund [Plaintiff's] payment for the tricycle," and subsequently made no contacts with Plaintiff. (*Id.* at ¶¶ 46-47).

Over two months later, on September 19, 2021, Defendant Mobilityless, LLC drew an unauthorized check from her bank account in the amount of $125.00 and deposited it into a Mobilityless, LLC bank account. (*Id.* at ¶¶ 48-49). The memo line of the check stated "Liftgate Fee." (*Id.* at ¶ 49). Plaintiff contends she "was not notified of the transaction before it was completed and did not consent to the transaction." (*Id.* at ¶ 50). Plaintiff then alleges, the following day, Defendants Mobilityless, LLC and Gabor Smatko received a demand letter sent on behalf of Plaintiff pursuant to the Massachusetts Consumer Protection Act, to which Defendants did not respond. (*Id.* at ¶¶ 51-52). Consequently, Plaintiff, individually and on behalf of a consumer class,[2] brought claims for violation of (1) the Massachusetts Consumer Protection Act, (2) the Racketeer Influenced and Corrupt Organizations Act, (3) conspiracy, and (4) the Uniform Fraudulent Transfer Act.

After these claims were brought against Defendants, Defendants filed their Motion to Compel Arbitration. (Doc. 16, "Mot."). The Motion is supported by the Declaration of Defendant Gabor Smatko. (Doc. 16-1). In his Declaration, Defendant Smatko states that

---

[2] Plaintiff seeks certification of a single class as follows: "All persons within the United States, other than any of Plaintiff's counsel, who (1) purchased merchandise from Mobilityless, LLC through its website www.mobilityless.com [sic]; (2) during the time period from September 2018 to December 31, 2021; (3) who were charged a lift gate fee deposited to the Mobilityless, LLC bank account at TD Bank ending in 7648." (Compl. at ¶ 55).

in 2018, he was involved in, and has personal knowledge about, the Website's creation. (*Id.* at ¶ 3).  He contends since its launch in 2018, the Website has posted each of the following policies and agreements: (1) "Our Policy"; (2) Shipping Delivery Policy; and (3) a "Privacy Policy."  (*Id.* at ¶ 6).  Defendant Smatko further states that in June 2020, he added to the Website a "Waiver" policy, specifically entitled "Dispute Resolution Agreement & Class Action Waiver" (the "Arbitration Agreement"), which has never changed since it was added to the Website in June 2020.  (*Id.* at ¶¶ 10, 12).

In relevant part, the Arbitration Agreement provides that it "is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq.," "evidences a transaction involving commerce," and "applies to any legal dispute, past, present, or future arising out of or related to Customer . . . purchasing any of our products from us ('Company') or relationship with any of its agents, employees, affiliates, successors, assigns, subsidiaries or parent companies (each of which are third party beneficiaries of this Agreement)."  (*Id.* at ¶ 13).

Moreover, the Arbitration Agreement states it "is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law, and therefore this Agreement requires that all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial."  (*Id.* at ¶ 14).  Such disputes expressly include, but are not limited to, "disputes arising out of or relating to interpretation or application of this Agreement, including the scope, formation, enforceability, revocability or validity or the Agreement or any portion of the Agreement."  (*Id.* at ¶ 15).  The Arbitration Agreement also informs each customer that "with your purchase, you automatically and expressly waive any right you may have to arbitrate a class action and automatically agree to these terms."  (*Id.* at ¶ 17).

Defendant Smatko explains in his Declaration that each customer who places an order for a product through the Website must enter their name, address, and other information.  (*Id.* at ¶ 18).  Before being able to place the order, the customer must click a box confirming "I have read and agree to the website **terms and conditions**\*) (bold emphasis in original).  (*Id.* at ¶ 19).  Defendant Smatko further states the box is not

automatically checked, and each customer must affirmatively click it to place an order through the Website.  (*Id.* at ¶ 21).  The phrase "terms and conditions" is bolded and hyperlinks to the Website's various policies.  (*Id.* at ¶ 22).  When a customer clicks on the hyperlink, all the Website's terms and conditions—including the Arbitration Agreement—appear, allowing the customer to scroll through and read each policy.  (*Id.* at ¶ 23).

In response to the Motion, Plaintiff submitted her Declaration stating, "I did not check a box agreeing to arbitration and did not review an arbitration clause at the time I purchased goods from the website." (Doc. 17-1 at ¶ 20).  Nor did she claim to have clicked on any links titled "Policy" or "Waiver."  (*Id.* at ¶ 19).  Plaintiff states she would have remembered if there had been (1) "a requirement for me to click a box agreeing to website policies" and (2) "an arbitration waiver on the website."  (*Id.* at ¶¶ 17-18).

Included in Plaintiff's Response was the Declaration of her attorney, Adam Deutsch. (Doc. 17-2).  Mr. Deutsch states that in 2019, he represented two individuals in a lawsuit against Defendants, and during that litigation "there was no mention of arbitration" by Defendants.  (*Id.* at ¶¶ 3-4).[3]  Additionally, Mr. Deutsch references an attachment (Exhibit C) depicting the webpage www.mobility4less.com/policy "as it is maintained by [an internet archive website, www.web.archive.org] as of June 24, 2021, after Ms. Makuc ordered her electric tricycle," and states "there was no reference to arbitration or waiver of class claims on the policy page" as of that date.  (*Id.* at ¶¶ 13, 17).[4]

## II.   Legal Standard

Under the Federal Arbitration Act ("FAA"), "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States District Court ... for an order directing that ... arbitration proceed in the manner provided for in [the arbitration] agreement."  9 U.S.C. § 4.  The

---

[3] The issue of mandatory arbitration would not have arisen in 2019 if the Arbitration Agreement was added to the Website in June 2020.  Plaintiff provides no evidence to refute Defendants' assertion that the Agreement was only in place as of June 2020.

[4] Defendants have not claimed the Arbitration Agreement is located in the "Policy" section. The Arbitration Agreement is found in the Website's "Waiver" section, (*See* Doc. 16-1 at ¶¶ 10, 12), which is visible in Exhibit C.  The Court's research of the webpage www.mobility4less.com/waiver via internet archive, as of April 15, 2021—days before Plaintiff purchased the tricycle—reveals the Arbitration Agreement is clearly posted.

district court must compel arbitration if a party has failed to comply with a valid arbitration agreement. *Id.* The district court must also stay the proceedings pending resolution of the arbitration at the request of one of the parties bound to arbitrate. *Id.* at § 3; *see also Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) (holding that "[w]hen a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA **compels** the court to stay the proceeding" rather than dismissing the suit) (emphasis added).

In determining whether to compel arbitration, the court must limit its review to (1) whether a valid agreement to arbitrate exists and, if so, (2) whether the agreement encompasses the dispute at issue. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If the answer is affirmative on both queries, then the court must enforce the arbitration agreement in accordance with its terms. *Id.* As a general matter, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Arbitration agreements governed by the FAA are presumed to be valid and enforceable. *See Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226-27 (1987). However, the FAA's saving clause "permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotation marks and citation omitted). Thus, "[i]n determining the validity of an agreement to arbitrate, federal courts 'should apply ordinary state-law principles that govern the formation of contracts.'" *Cir. City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).[5] The party opposed to arbitration bears

---

[5] Plaintiff contends Massachusetts law applies, and Defendants contend Arizona law applies. "Before a choice of law question arises, there must first be a true conflict between the potentially applicable bodies of law." *Starr Indem. & Liab. Co. v. Rolls-Royce Corp.*, No. CV-14-02594-TUC-RM, 2015 WL 13260482, at *1 (D. Ariz. Nov. 30, 2015) (quoting *Huber v. Taylor*, 469 F.3d 67, 74 (3d Cir. 2006). "If there is no conflict, then the district court sitting in diversity may refer interchangeably to the laws of the states whose laws potentially apply." *Id.* Since the result is likely the same under either state's law, the Court will not perform a conflict of laws analysis and will apply the laws of both jurisdictions.

1    the burden of showing the arbitration agreement is invalid or does not encompass the

2    claims at issue.  *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000).

3    **III.    Discussion**

4        Plaintiff argues (1) a valid Arbitration Agreement was not formed because the terms

5    were not reasonably communicated to Plaintiff, Plaintiff did not accept the terms of the

6    Agreement, and consideration was not received by Defendant Mobilityless, LLC; and (2)

7    as a dissolved LLC, Mobilityless, LLC cannot compel arbitration.  The Court will address

8    the arguments in turn.

9        **A. Enforceability of the Arbitration Agreement**

10        Online agreements typically fall in one of three categories: (1) clickwrap

11    agreements, "where website users are required to click on an 'I agree' box after being

12    presented with the website's terms and conditions," *Nguyen v. Barnes & Noble Inc.*, 763

13    F.3d 1171, 1175-76 (9th Cir. 2014); (2) browsewrap agreements, "where a website's terms

14    and conditions are generally posted via hyperlink at the bottom of the website screen," *id.*;

15    and (3) hybridwrap agreements, "a hybrid variation where a hyperlink of the terms and

16    conditions are placed near a box that a consumer must click to continue." *Scribner v. Trans*

17    *Union LLC*, No. 2:23-CV-02722-JAM-CKD, 2024 WL 3274838, at *3 (E.D. Cal. July 2,

18    2024); *see also Berman v. Freedom Fin. Network, LLC*, 2020 WL 5210912, *2 (N.D. Cal.

19    2020) ("Often websites present some hybrid of the two, such as putting a link to the terms

20    of the agreement on the page, sometimes near a button the user must click to continue.  For

21    instance, in *Nguyen* the 'Terms of Use' hyperlink was near the buttons a user would need

22    to click to complete an online purchase.").

23        Although these characterizations are non-dispositive of whether an agreement is

24    enforceable, they are helpful guideposts in framing the analysis.  *See Gaker v. Citizens*

25    *Disability, LLC*, 654 F. Supp. 3d 66, 75 (D. Mass. 2023).  Plaintiff contends the Website

26    contains a browsewrap agreement, while Defendants contend the Website contains a

27

28

*See Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515 (9th Cir. 2023) (declining to engage in a detailed conflict of laws analysis on the issue of constructive notice with respect to California and Massachusetts law because both states apply "substantially similar rules.")

clickwrap agreement.  Hybridwrap is the most accurate characterization of the Arbitration Agreement.   *See Myers v. Experian Info. Sols. Inc.*, No. CV-23-01901-PHX-DJH, 2024 WL 2278398, at *4 n.2 (D. Ariz. May 20, 2024) (characterizing a similar agreement as a hybrid); *see also Williams v. Experian Info. Sols. Inc.*, No. CV-23-01076-PHX-DWL, 2024 WL 3876171, at *12 (D. Ariz. Aug. 20, 2024) (same).

As a general matter, "[f]or an enforceable contract to exist, there must be 'an offer, acceptance, consideration, a sufficiently specific statement of the parties' obligations, and mutual assent.'" *Buckholtz v. Buckholtz*, 435 P.3d 1032, 1035 (Ariz. Ct. App. 2019); *JPMorgan Chase & Co. v. Casarano*, 963 N.E.2d 108, 111 (Mass. App. Ct. 2012) (setting out same elements).   Under Ninth Circuit precedent, for online contracts, "[u]nless the website operator can show that a consumer has actual knowledge of the agreement, an enforceable contract will be found based on an inquiry notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms."  *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022).[6]  A substantially similar test applies under Massachusetts law.  *Kauders v. Uber Technologies, Inc.*, 159 N.E.3d 1033, 1049, 486 Mass. 557, 572 (Mass. 2021) (holding for provisions of an online agreement to be enforceable, "there must be both reasonable notice of the terms and a reasonable manifestation of assent to those terms").

**1.  Reasonably Communicated Terms**

First, to establish that Plaintiff had constructive or inquiry notice of the terms and conditions containing the Arbitration Agreement, Defendants must show the terms were "displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Berman*, 30 F.4th at 856-57.  In considering the

---

[6]  *See Williams v. Experian Info. Sols. Inc.*, No. CV-23-01076-PHX-DWL, 2024 WL 3876171, at *12 n.9 (D. Ariz. Aug. 20, 2024) ("Although *Berman* addressed the requirements for proving assent under California and New York law, its analysis is equally instructive here because those states, like Arizona [and Massachusetts], apply the rule that '[p]arties traditionally manifest assent by written or spoken word, but they can also do so through conduct.'") (quoting *Berman*, 30 F.4th at 855).

conspicuousness of the notice, the *Nguyen* Court noted details of the layout of the website: (1) "the 'Terms of Use' link appears either directly below the relevant button a user must click on to proceed in the checkout process or just a few inches away"; (2) "the content of the webpage is compact enough that a user can view the link without scrolling ... [or] is close enough to the 'Proceed with Checkout' button that a user would have to bring the link within his field of vision in order to complete his order;" and (3) "checkout screens here contained 'Terms of Use' hyperlinks in underlined, color-contrasting text." *Berman*, 2020 WL 5210912, at *2 (citing *Nguyen*, 763 F.3d at 1178).

The Court finds that a reasonable Internet user in Plaintiff's position would have seen the terms and conditions and would have been able to locate the Arbitration Agreement via the hyperlink because (1) Plaintiff (and every customer who purchases a product through the Website) was required to affirmatively click the box confirming "I have read an agree to the website **terms and conditions**\*," (2) the box is not automatically checked, (3) the phrase "terms and conditions" is bolded and hyperlinks to the Website's policies, including the Arbitration Agreement, (4) when the hyperlink is clicked on, each of the Website's policies appears in a window directly above, and (5) both the check box and the bolded phrase "terms and conditions" are located directly above the "Place Order" button to complete the customer's purchase. Based on these features, the Court finds the website design provides constructive notice of the terms and conditions containing the Arbitration Agreement.

## 2.  Manifestation of Assent

Second, Defendant must show Plaintiff unambiguously manifested her assent to be bound by the Agreement. *See Berman*, 30 F.4th at 857. For Internet agreements, a consumer's "click of a button can be construed as an unambiguous manifestation of assent only if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement." *Id.* (internal citation omitted).

Plaintiff argues she did not take action manifesting assent to be bound by the Agreement because she declares under oath that she did not click a box agreeing to the

Website's Terms and Conditions.  Plaintiff further contends "Defendants have not provided the Court with computer records establishing that [Plaintiff] has actual knowledge of the arbitration policy" (Doc. 17 at 7), and Defendants "ha[ve] no contemporaneous records establishing that [Plaintiff] viewed and/or accepted the alleged terms of service" of the Website.  (*Id.* at 10).

Plaintiff cites to *Roberts v. Obelisk, Inc.*, No. 18CV2898-LAB (BGS), 2019 WL 1902605 (S.D. Cal. Apr. 29, 2019) in her Response.  (*Id.*).  However, this case refutes Plaintiff's argument that Defendants failed to meet their burden because they did not produce "contemporaneous records" that Plaintiff actually viewed and assented to the Website's terms and conditions.  The *Roberts* court stated, "Plaintiff's second primary argument is that Obelisk has not provided an 'executed' version of the Terms and therefore cannot demonstrate that Plaintiffs assented to the agreement.  Were the Court to accept this argument, it would unravel nearly every clickwrap agreement on the Internet."  *Roberts*, 2019 WL 1902605 at *6.

Here, like in *Roberts*, Defendants have submitted evidence—"a declaration by its [principal Gabor Smatko]—showing that Plaintiff[] … was required to accept the [terms and conditions] prior to completing the transaction" as well as a copy of the Arbitration Agreement in effect on the date Plaintiff made her purchase.  *See id.*  Accordingly, that "Plaintiffs 'do not recall' agreeing to the terms is immaterial." *See id.*  What is dispositive here is that all customers purchasing products through the Website, including Plaintiff, had to affirmatively click the box confirming that "I have read and agree to the website **terms and conditions***" before completing the transaction.  *See Kauders*, 486 Mass. at 575 (holding an agreement unenforceable where user needed not affirmatively check an "I agree" box and stating "[r]equiring an expressly affirmative act, therefore, such as clicking a button that states 'I Agree,' can help alert users to the significance of their actions.  Where they so act, they have reasonably manifested their assent.").  Plaintiff may deny checking the "I agree" box, but she does not provide admissible evidence showing she purchased the tricycle from a website that does not require customers to do as much before making a

1    purchase.

2           Additionally, "[f]ederal courts likewise have recognized the general enforceability

3    of similar online agreements that require affirmative user assent." *See, e.g., In re Holl*, 925

4    F.3d 1076, 1084-85 (9th Cir. 2019) ("Here, there is no question Holl affirmatively assented

5    to the UPS My Choice Service Terms.  He checked a box acknowledging as much."); 

6    *Houtchens v. Google LLC*, 649 F. Supp. 3d 933, 940-42 (N.D. Cal. 2023) (granting motion

7    to compel arbitration because the hyperlinks to the terms of service provided plaintiff

8    "reasonably conspicuous notice" of the terms); *Abidzadeh v. Best Buy, Co.*, No. 20-cv-

9    006257-JSW, 2021 WL 4440313, at *5 (N.D. Cal. Mar. 2, 2021) (granting motion to

10   compel arbitration because directly above the "Sign In" button was the following text: "By

11   continuing you agree to our Terms and Conditions, our Privacy Policy, and the My Best

12   Buy® Program Terms"); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 912

13   (N.D. Cal. 2011) ("Because Plaintiff was provided with an opportunity to review the terms

14   of service in the form of a hyperlink immediately under the 'I accept' button and she

15   admittedly clicked 'Accept,' … a binding contract was created here.").  Therefore, the

16   Court finds the checkbox's placement directly above the "Place Order" button, when

17   combined with Plaintiff's requisite affirmative action in order to purchase the product,

18   constitutes an enforceable hybridwrap agreement that Plaintiff manifested her assent to be

19   bound by.

20                        **3.  Adequate Consideration**

21           Mutual promises to arbitrate serve as adequate consideration for agreements to

22   arbitrate.  *Cir. City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002) ("Circuit

23   City's promise to be bound by the arbitration process itself serves as adequate

24   consideration.") (internal citations omitted); *Perez-Tejada v. Mattress Firm, Inc.*, No. CV

25   17-12448-DJC, 2019 WL 830450, at *6 (D. Mass. Feb. 21, 2019) ("[I]t is well settled that

26   the mutual promises of the parties in an agreement for arbitration are sufficient

27   consideration each for the other.") (internal quotations and citations omitted).

28           Plaintiff argues no agreement to arbitrate was formed because no consideration was

exchanged between Plaintiff and Mobilityless, LLC at the time of purchase; instead, her initial payment was received by Mobilitytrend, LLC.  This argument fails, because whether there was sufficient consideration to form an arbitration agreement is wholly separate from the issue of consideration as to the contract for the sale of goods.  It is immaterial that Plaintiff received initial payment from Mobilitytrend, LLC rather than Mobilityless, LLC—by clicking the box and placing her order, Plaintiff and Defendants (including Mobilitytrend, LLC as a third-party beneficiary) made mutual promises to arbitrate their disputes and forgo the judicial forum.  Thus, the Court finds adequate consideration existed to support the Arbitration Agreement.

### B. A Dissolved LLC Can Compel Arbitration

Notwithstanding the Arbitration Agreement's enforceability, Plaintiff argues that Mobilityless, LLC, as a dissolved LLC, cannot compel arbitration.   (Doc. 17 at 14). Plaintiff argues a dissolved company may "prosecut[e] and defend[] suits," M.G.L. ch. 156C, § 45, in relation to "business [] necessary to wind up and liquidate its affairs," M.G.L. ch. 156C, § 70, but compelling arbitration is not within the scope of these powers. (*Id.* at 15).  This argument fails.

Courts have upheld a dissolved company's right to compel arbitration pursuant to contract on the theory that the dissolved company continues to exist for a certain time for the purpose of winding up its affairs.  W. J. Dunn, Annotation, *Dissolved Corporation's Power to Participate in Arbitration Proceedings*, 71 A.L.R.2d 1121 (originally published in 1960); *Milton L. Ehrlich, Inc. v. Unit Frame & Floor Corp.*, 5 N.Y.2d 275, 278 (N.Y. 1959) (holding that a dissolved stock corporation may participate in arbitration proceedings as an incident to winding up its affairs and discharging its obligations); 21 WILLISTON ON CONTRACTS § 57:43 ("A dissolved corporation may invoke the arbitration procedure.  If a party contracts with a corporation that is subsequently dissolved, the arbitration procedure is generally upheld.") (citing *Republique Francaise v. Cellosilk Mfg. Co.*, 309 N.Y. 269 (1955)).  While these cases deal with corporations, dissolved corporations and dissolved LLCs share the same power to carry on business for the purpose of winding up.

To support her argument, Plaintiff cites to *485 Lafayette St. Acquisition, LLC v. Glover Ests., LLC*, No. CIV.A. 10-2350-BLS1, 2012 WL 3216762 (Mass. Super. May 16, 2012).   In that case, the Suffolk County Superior Court invalidated a dissolved LLC's exercise of an option to purchase real estate because purchasing the parcel "is clearly continuing the business for which [the LLC] was established." *Id.* at *5.  The LLC was formed for the purpose of acquiring and developing property for residential use. *Id.* at *1. Plaintiff's reliance on *485 Lafayette St. Acquisition, LLC* is misplaced because while exercising an option to purchase real estate is clearly an effort to continue carrying on the dissolved LLC's original business of acquiring real estate, invoking arbitration as a defense to a lawsuit is not part of carrying on Defendant Mobilityless, LLC's original business of selling electric vehicles.  Defendant Mobilityless, LLC seeks to compel arbitration for the exact purpose of "defending [this] suit[]."  M.G.L. ch. 156C, § 45.

**IV.   Conclusion**

The Court finds the Website's checkout page provided Plaintiff with sufficient notice of the terms and conditions containing the Arbitration Agreement.  By purchasing the tricycle, she necessarily checked a box next to the words "I have read and agree to the website **terms and conditions\***, manifesting her assent to the hyperlinked terms, including that "all disputes [] be resolved only through an arbitrator." Thus, a binding arbitration agreement governing this dispute exists between Plaintiff and Defendants.

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Compel Arbitration (Doc. 16) is **GRANTED**.

…

…

…

…

…

…

- 12 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IT IS FURTHER ORDERED** this action is **stayed** pending the completion of arbitration between Plaintiff and Defendants. The parties shall file joint status reports with the Court every ninety (90) days and a status report within five (5) days of the final arbitration order.

Dated this 17th day of September, 2024.

Honorable Roslyn O. Silver
Senior United States District Judge